DELORA M. HUNTER et al., as Administrators, etc., Respondents, *v.* THE COOPERSTOWN AND SUSQUEHANNA VALLEY RAILROAD COMPANY, Appellant.

A man who is *sui juris*, and in the full possession of his faculties, with nothing to disturb his judgment, who attempts to board a railroad train moving at the rate of from four to six miles an hour, is chargeable, as matter of law, with negligence, and the question in such a case is not made one of fact by proof that the man was directed by the conductor of the train, if he was going on the train, to "jump on."

(Argued January 22, 1889; decided February 8, 1889.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 19, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for alleged negligence causing the death of Henry Hunter, plaintiffs' intestate.

The material facts are stated in the opinion.

*E. M. Harris* for appellant. The attempt of plaintiff's intestate to get on the train while in motion, under the circumstances proven in this case, was an act of negligence which in fact contributed to the injury he received, and for this reason the plaintiffs were not entitled to recover. (*Phillips* v. *R. & S. R. R. Co.*, 49 N. Y. 177; *Burrows* v. *E. R. Co.*, 63 id. 556; *Gavet* v. *M. & L. R. R. Co.*, 16 Gray, 501; *Harvey* v. *E. R. R. Co.*, 116 Mass. 269; *Lucas* v. *N. B. & T. R. R. Co.*, 6 Gray, 64; *Solomon* v. *M. R. R. Co.*, 103 N. Y. 437.) The boarding or alighting from a moving train is presumably and generally a negligent act, *per se*. (*Solomon* v. *M. R. R. Co.*, 103 N. Y. 437; *Shannon* v. *B. & A. R. R. Co.*, 4 East, 100; 2 Wood's R. R. Law, 1155; *Paulitsch* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 280; *Wilds* v. *H. R. R. Co.*, 24 id. 430–433; *Owen* v. *H. R. R. R. Co.*, 35 id. 516; *Gonzales* v. *N. Y. & H. R. R. Co.*, 38 id. 440;

*Dwight* v. *G. L. Ins. Co.*, 3 N. Y. S. R., 115; *Crafts* v. *City of Boston*, 109 Mass. 519; *City of Lancaster* v. *Kissinger*, 11 W. N. C. 151; *Powell* v. *N. Y. C. & H. R. R. R. Co.*, 14 N. Y. S. R. 74.) Where the facts are uncontroverted, the question of negligence is a question of law for the court. (*Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y. 9; *Morrison* v. *E. R. Co.*, 56 id. 302; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330.) Proof in some form that the deceased did not contribute to the injury by any negligence of his own constitutes a part of the plaintiffs' case. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465; *Warren* v. *F. R. R. Co.*, 8 Allen, 227–230; *Lee* v. *T. C. G. Co.*, 98 N. Y. 115; *Shappert* v. *Ringler*, 45 Super. Ct. 345.) A passenger must not do that which is obviously dangerous, although he is advised to do it by the company's agents. (*C. B. & Q. R. R. Co.* v. *Hazard*, 26 Ill. 373; *R. R. Co.* v. *Jones*, 95 U. S. 439; *Morrison* v. *E. R. Co.*, 56 N. Y. 302–310; *Tolman* v. *S. B. & N. Y. R. R. Co.*, 98 id. 198; *Davenport* v. *B. C. R. R. Co.*, 2 East. Rep. 826.) It was not negligence to allow the train to run beyond the station — that did not expose the deceased to danger. (*Taber* v. *D. L. & W. R. R. Co.*, 71 N. Y. 489; *Paulitsch* v. *N. Y. C. & H. R. R. R. Co.*, 102 id. 280.) Whether the train was going to stop or not, or whether the deceased could or could not have known that it would stop at the station is unimportant, or whether there was only one brakeman on the train, and he was not able to stop the train, is also unimportant. (*C. R. I. & P. R. R. Co.* v. *Houston*, 5 N. Y. Week. Dig. 523; *Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.*, 82 N. Y. 424.) The danger in attempting to get aboard this train while in motion was obvious, and such as a reasonable and prudent man would not have incurred, and hence plaintiff's intestate should not have assumed the risk. (2 Wood's R. R. Law, 1152; *Guinon* v. *N. Y. & H. R. R. Co.*, 3 Robt. 25.) The invitation of the conductor to jump on was not, in fact, and was not intended as a command to be enforced, or which could have been enforced. (*Guinon* v. *N. Y. & H. R. R. Co.*, 3 Robt. 25;

*Filer Case*, 49 N. Y. 47; S. & R. on Neg. § 281; Beach on Contrib. Neg. 19, 22–27; *Mayor, etc.*, v. *Bailey*, 1 Denio, 443.) In attempting to get on the train, under the circumstances proven in this case, the deceased was committing an indictable offense. (Penal Code, § 426, subd. 2; *Platz* v. *City of Cohoes*, 89 N. Y. 219.)

*James A. Lynes* for respondents. The defendant was guilty of negligence in inviting the plaintiffs' intestate to get on a moving train. (1 Rorer on R. R. 476, 479; 2 id. 1130; *Weston* v. *E. R. Co.*, 73 N. Y. 595.) A passenger, when taking or leaving a railroad car at a station, has a right to assume that the company will not expose him to unnecessary danger, but will discharge its duty, which requires it to provide passengers a safe passage to and from the train. (*Brassel* v. *N. Y. C. & H. R. R. R. Co.*, 48 N. Y. 241; 27 Alb. L. Jour. 83; *Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 464; Beach on Con. Neg. 171, 176. The defendant was guilty of negligence in not stopping the train at the passenger station so that the plaintiffs' intestate could have got on the train safely. (*Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128, 151; S. & R. on Neg. [2d. ed.] § 282; Wharton on Negligence, 369, 371.) The plaintiffs' intestate was not, under the circumstances, and the evidence guilty of contributory negligence. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47; *McIntyre* v. *N. Y. C. R. R. Co.*, 37 id. 287; *Abbey* v. *N. Y. C. & H. R. R. R. Co.*, 20 N. Y. Week. Dig. 37; *Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128; 71 Ga. 22; *Glushing* v. *Sharp*, 96 N. Y. 676, 677; *Fitzgerald* v. *L. I. R. R. Co.*, 10 N. Y. S. R. 433; Wharton on Negligence [2d ed.] § 369; *Harvey* v. *E. R. R. Co.*, 116 Mass. 269; *Solomon* v. *M. R. R. Co.*, 103 N. Y. 437; S. & R. on Neg. [2d ed.] § 282; *P. R. C.* v. *McClosky*, 23 Penn. St. 526; *Dixon* v. *B. C. & C. R. Co.*, 3 N. E. R. 65; Beach on Con. Neg. 155, 156; *Johnson* v. *W. R. R. Co.*, 70 Penn. St. 357; *R. R. Co.* v. *Miller*, 19 Mich. 305; *R. R. Co.* v. *Russ*, 112 U. S. 377; *Rauch* v. *Floyd*, 31 Pa. St. 358.)

Peckham, J. Accepting the facts as testified to on the part of the plaintiffs in this action, it appears that on the 25th day of September, 1884, the plaintiffs' decedent came to the station of the defendant, called Phœnix Mills, in the early morning for the purpose of taking a train to the neighboring village of Oneonta. There was a platform in front of the station, the southern end of which was used for freight and was two or three feet higher than the northern end, which was used more especially for passengers. The passenger portion of the platform was only about one foot above the ground, and communication between the upper and lower platforms was had by steps leading from one to the other. The top of the freight platform was four and one-half feet higher than the rails of the defendant's road. At the north end of the freight platform the distance between it and a car as it would pass along the track would be six inches. At the center of the freight platform it would be four inches and the same distance at the south end. The plaintiffs' decedent, upon hearing the whistle of a train approaching from the north on its way towards Oneonta, got up and stood on the passenger portion of the platform awaiting its arrival, and when it came within a short distance of the station the conductor stepped out on the platform of the rear passenger car and asked plaintiffs' decedent if he was going, and added, "if you are, jump on." There were but two witnesses sworn on the part of the plaintiffs in regard to the rate at which the train was moving when this direction was given by the conductor. One of them says the train was moving at that time six or eight miles an hour. The other, who was the engineer of the train, stated that it was going from four to six miles an hour. When the conductor directed the deceased to jump on, he was standing on the passenger platform three or four feet north of the steps connecting with the freight platform, and he started to jump on the front platform of the passenger car while it was thus in motion. He was caught in some shape, as the witnesses say, without being able to describe exactly how, and rolled along the station platform with his head and shoulders above it. His body was caught about the hips. The

train was stopped and he was taken out and died within a short time.

From this evidence it is quite plain that the train was in comparatively rapid motion at the time when the deceased made his attempt to board it. I say comparatively rapid motion, meaning by that a motion that was rapid when taking into consideration that a man was attempting to board a train thus moving. There can be no doubt that the train was moving at least from four to six miles an hour. The engineer thus fixes it, and being a witness for the plaintiffs and not in the defendant's employ at the time he was sworn, it may be assumed that he did not put the speed any greater than in fact it was.

The deceased was a man in the full vigor of life, presumably of ordinary judgment, at least up to the average of mankind, and he was at a familiar station, and about to take a train to go to a neighboring village a few miles distant. It was the duty of the railroad company (having advertised so to do) to stop its trains at the station in question, and to give ample time to all persons desirous of getting on or leaving trains at that station to do so.

The important question which arises is, does a man who is *sui juris*, and in the full possession of his faculties, with nothing to disturb his judgment, act with ordinary care in endeavoring to board a train moving at the rate of from four to six miles an hour? It seems to me there can be but one answer to such a question. That it is a dangerous, a most hazardous attempt must be the common judgment of all men. Persons are taught, from their earliest youth, the great danger attending upon an attempt to board or leave a train while it is in motion, and no person of mature years and judgment but has the knowledge that such an attempt is dangerous in the highest degree.

It is substantially admitted in this case that it would have been negligence on the part of the deceased to have made the attempt, had it not been for the request, or what is termed the direction of the conductor, to him to get on. It may be

assumed that this direction implied a notice to the deceased that the train would not stop at that station, and that unless he attempted to get on while the car was thus in motion, he would be left at the station and compelled to take another and a later train. It may be assumed that in giving this direction, and failing to stop the train the company was chargeable with negligence, and yet it counts for nothing as a justification or excuse for the conduct of the deceased in attempting to board a train under such circumstances.

There may, undoubtedly, be cases in which an attempt to get on or off a moving train would not be regarded as negligence, as matter of law, and where the question of negligence upon all the facts of the case should be submitted to the jury. One such case was that of *Filer* v. *New York Central R. R. Co.* (49 N. Y. 47). There the plaintiff received the injuries complained of in attempting to get off the cars while they were in motion, making very slow progress. The plaintiff, who was a woman, was directed by the brakeman on the car to get off, and there was evidence upon which the jury might have found that she was told by him that they would not stop or move more slowly to enable her to do so. The name of the station had been called and the speed of the train had been greatly reduced, so much so that baggage had been taken from the baggage-car and removed by the porter, and one man, who was supposed to be a little lame, had gotten off safely. ALLEN, J., in delivering the opinion of this court, said: "She was put to her choice, without any fault of hers, whether to obey the advice and suggestion of the defendant's servant, and follow the example of the man who had preceded her, or to remain on the cars and be carried beyond the place of her destination, and away from her friends; and it was a proper question for the jury, whether this was or was not, under the circumstances, an act of ordinary care and prudence." The learned judge, continuing, said: "Had the cars been going at a rapid rate, the plaintiff must have known that she would be injured in leaping from them, and the attempt to leave the cars, under such

circumstances, even at the instance of a railway servant, would have been a wanton and reckless act, and no recovery could be had against the defendant."

In *Morrison* v. *Erie Railway Company* (56 N. Y. 302), it was held that the question whether a person has been guilty of contributory negligence in attempting to alight from a car while it is in motion is not in every case a question of fact for a jury ; that when the facts are undisputed the question of contributory negligence may become one of law.   In that case, the plaintiff, suing by guardian, was about twelve years of age, and the train when it approached the station slowed up.   It had passed the platform and, while still in motion, the plaintiff's father took her under his arm and stepped from the car and fell, and she was injured.   FOLGER, J., delivering the opinion of the court, said : " Can it be said that a person of ordinary prudence and care would have swung himself from a car in motion down to the ground in the dark, laden with the weight of a child twelve years old, having but one hand and one arm to aid himself with, when there was no other danger to be avoided by meeting this, and no incentive to the act other than the inconvenience of being carried by his place of abode, and with a full apprehension of the danger he was about to run ?   I think not, and I am of the opinion that it is so clear that the law and the court should have given the answer without calling in the aid of a jury."   (See, also, *Phillips* v. *Rensselaer & Saratoga R. R. Co.*, 49 N. Y. 177 ; *Solomon* v. *Manhattan R. Co.*, 103 id. 437.)

In the last cited case ANDREWS, J., says : " Negligence, no doubt, is usually a question of fact of which the jury must inquire, but the inference of negligence in a given case may be so clear and convincing that the judge may direct a verdict. The conclusion that it is *prima facie* dangerous to alight from a moving train is founded on our general knowledge and common experience ; and it is akin to the conclusion now generally accepted, that it is in law a dangerous and, therefore, negligent act, unless explained and justified by special circumstances, to

attempt to cross a railroad track without looking for approaching trains. In boarding a moving train there is generally less excuse than in alighting from one. The party attempting it is not often under the same stress of circumstances as frequently happens in the former case. He may be compelled to wait for another train, but this is an inconvenience merely, which does not justify exposing himself to hazard. ' * * * If men will take hazards they must bear the consequences of their own rashness, and it is no just reason for visiting the consequences upon another that his negligence co-operated in producing the result." We think that the facts in this case are so overwhelming in their nature that no reasonable judgment can be formed as to the act of the deceased in attempting to jump upon this moving train other than that it was dangerous and reckless, and that the injury resulting therefrom was contributed to by him.

We do not regard it as of the slightest importance, under the circumstances of this case, that the conductor of the train notified the deceased to jump on. That notification certainly cannot be interpreted to mean more than that the train would not stop or go slower than it was then going, and that if the deceased wanted to take it he must jump on at that moment. That does not alter the highly dangerous nature of the act itself. The deceased was in absolute safety at the time the direction was given. It created no emergency which called for the exercise of immediate judgment in the choice between two dangers. It was a simple question of possible inconvenience of taking a later train, or reaching his destination by some other conveyance, and it afforded not the slightest justification or excuse for attempting to board a train moving at that rate of speed, and when he did it he did it at his own risk.

We think the plaintiff, upon this state of facts, should have been nonsuited.

For these reasons the judgments of the courts below should be reversed, and a new trial granted, costs to abide the event.

DANFORTH, J. (dissenting). It is not suggested by the appellant that there was any misdirection by the trial judge, nor but that the defendant was guilty of negligence in not stopping the train. The appeal rests upon the single proposition that the attempt of the plaintiffs' intestate to get upon the moving train was an act of negligence contributing to his injury, and therefore sufficient, as matter of law, to defeat a recovery. On the contrary, it seems to me that it was merely one act among others in the case, and to be considered with all the attendant circumstances. It may derive its explanation from the conduct of the defendant, and it was, therefore, for the jury to say how far the decedent was influenced by it upon the occasion of the accident. (*Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128; *Filer* v. *Same*, 49 id. 47; *Glushing* v. *Sharp*, 96 id. 676.) And if they found that the conditions which led him into danger were of the defendant's own creation, both common sense and justice forbid that it should be allowed to withhold compensation.

If, on the other hand, the danger, notwithstanding the solicitation of the conductor, was so manifest that in the exercise of ordinary prudence the intestate should have observed it, or, if observing it, he went recklessly to the car, he should suffer the consequences of an injury brought on by himself. Many circumstances are to be taken into account in answering these questions, and if inferences are to be drawn, not all one way, then no tribunal save a jury is authorized to pass upon them.

The appellant relies upon the single fact that the train was in motion; that, as appears from the cases referred to, is not enough to exonerate the defendant. Those decisions show that an intending passenger may attempt to board a moving train, and, if injured in doing so, may still recover; that is, the act is not negligent of itself. The speed of the train is, in all cases, to be considered; but this should be done in connection with the conduct of the train servants, and the age and activity of the traveler, before his action upon the occasion in question can be characterized. (*Eppendorf* v *B. C. & N.*

*R. R. Co.,* 69 N. Y. 195; *Filer* v. *N. Y. C. R. R. Co.,* 49 id. 47; *Burrows* v. *Erie R. Co.,* 63 id. 556; *Hickey* v. *B. & L. R. R. Co.,* 14 Allen, 429.)

It is of the greatest importance, therefore, to ascertain the speed of the train. What was it? No exact testimony was given. But the train left Cooperstown at the usual time; the distance to Phœnix was two and one-half or three miles only, and the train made the run to that point without steam. Phœnix was a regular passenger station where all trains were advertised to stop. The conductor intended to stop at that station, and was trying to do so. At about eighty rods distant the whistle was blown for the station, and the brakes applied continually, until the train, in fact, came to a standstill a short distance beyond the platform, twenty or thirty feet, or, as one witness says, fifty feet, and would have stopped sooner, or at the station, except that there was only one brakeman, and the brakes were defective. All that time the conductor stood upon the platform. In that position and while eight or ten rods distant, he leaned out by the side of the car, looking forward, and saw Hunter upon the station platform, facing the incoming train and evidently waiting for it. When within eight or ten feet, the conductor said to him: " Are you going? If you are, jump on." He reached out his hand and foot, tried to get on the car, and in some way was caught and killed. These are circumstances about which there is no doubt: the engine moving without steam; the conductor intending to stop at the station; the whistle blown for the station as notice of that intention; the brakes applied; the train actually slowing up; and the conductor, expecting a passenger, calling him to get on. The effort was made to do so, and it failing, the train was actually stopped within a few feet from the place where the accident occurred. Do not these circumstances all tend to show, and permit the inference, that the train was moving very slowly? There was the intention to stop; the conductor's expectation to take his passenger; and the actual stoppage of the train just after the accident occurred.

But the opinions of witnesses are referred to as showing the contrary. In view of the circumstances I have exhibited, those opinions may be taken with many grains of allowance. One witness says : " I should think the train was going about six or eight miles an hour." He was a by-stander ; his attention was not called to the speed of the train at the time in question. But he was the plaintiff's witness and his evidence is in the case for what it is worth. What is it worth ? About six or about eight — at once a difference of two miles. The engineer says : "At the time the train passed the station, I should say it was going from four to six miles an hour." Wicks, the fireman, testifies : " I would say from four to six miles an hour, slacking all the while." The phrase used by all the witnesses in expressing an opinion is in the highest degree indefinite ; and their testimony must be weighed in view of the circumstances to which I have alluded. The rate of speed was to be determined as a fact. No witness spoke from accurate information, but gave his opinion merely ; the conductor not testifying to it. Observers are competent witnesses, but few are able to say with even tolerable accuracy the rate of speed at which a train at any given moment is moving. In this case their attention was not directed to it, and the weight of their testimony was to be determined. The court cannot say from it that the train was, as a fact, moving at a given rate. A jury might say the speed was less than four miles an hour, as much less as the circumstances alluded to might indicate to them, and not necessarily faster than one might walk. The deceased was a young man, and, so far as appears, with the active habits of that age. He stood upon the platform of the station, mentally prepared to take the train, with every reason to expect that it would stop as usual. It cannot be said, as matter of law, that a man of ordinary prudence would not have yielded to the direction of the conductor, nor can it be said that to him, in view of the circumstances, the train was moving at a palpably dangerous rate. He did not attempt to board the train by reason of his own impatience, but upon the invitation of the defendant's servant. It

is to be considered whether this direction of the conductor was not only a practical expression of his belief that the step might be taken in safety, but also as a strong expression of his opinion that the movement of the train was slow and within the bounds of safety. All these things might properly lead a jury to the reasonable belief that to the decedent the train did appear to be moving slowly, and, moreover, that it was, in fact, brought to such a point as only prevented complete inertness or stoppage — a resource of engineers to avoid the necessity of overcoming the *vis inertia* of a heavy train at rest. At any rate the defendant ought not to be permitted to assert that the intestate did not exercise what now it seems would have been better judgment in the condition in which he was placed by its acts. That he did not act prudently should not be adjudged as matter of law; nor can a court say to what extent his action was governed by what might reasonably be inferred from that of the conductor.

The questions were for the jury and were properly submitted to them. I think the judgment which followed their verdict should be affirmed.

All concur with PECKHAM, J., for reversal, except DANFORTH, J., dissenting.

Judgment reversed.