### PULLUTRO *v.* DELAWARE, L. & W. R. Co.

*(Superior Court of Buffalo, General Term.* November 19, 1889.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—PROVINCE OF JURY.
   In an action against a railroad company for personal injuries, where it appears that plaintiff's leg was crushed between two cars while he was swinging between them for the purpose of boarding a train,—there being no other way of boarding it, —as required by the course of his employment, and the cars having no appliances to prevent their coming into immediate contact, the question of defendant's negligence in regard to safe and suitable machinery is for the jury, and its negligence is not excused by the concurring negligence of a fellow-servant.

2. SAME—RISKS OF EMPLOYMENT.
   It is likewise a question for the jury whether plaintiff's injury resulted from a risk which he assumed on entering defendant's service, he having no knowledge, so far as appears, of appliances such as were lacking on the cars, and never having seen cars come together as those did.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   Where plaintiff was employed under the direction of a foreman, and was required to board the train by order from him, which was almost simultaneous with the starting of the train, it is a question for the jury whether he was guilty of contributory negligence in boarding the train while it was in motion.

Motion for new trial on exceptions.

Action by Giovanni Pullutro against the Delaware, Lackawanna & Western Railroad Company for personal injuries. Plaintiff was nonsuited, and moves for a new trial.

Argued before BECKWITH, C. J., and HATCH, J.

*Emory P. Close,* for plaintiff. *John G. Milburn,* for defendant.

HATCH, J. The action is brought by plaintiff to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant. It appeared upon the trial that plaintiff was employed as a laborer upon defendant's gravel train, and entered such employ on the 26th day of August, 1888, continuing therein until noon of the following day, when he sustained the injury complained of. The course of plaintiff's employment required him, in company with some 30 other co-laborers, to unload cars of gravel, and then reload the same with ties which lay by the side of the track. On the day of the injury the train consisted of 10 or 12 flat-bottom gravel-cars, with an engine attached. It had gone out at 7 o'clock in the morning, and had loaded and unloaded the cars at different places for a distance of five or six miles, the train running back and forth several times for that purpose, the men being required to get on and off the cars at the several times. The method of conducting the business was for the gravel to be unloaded, and then some of the men got down from the cars, picked up the ties, and placed them upon the cars. Others remained thereon to arrange them. During this time the train would sometimes move very slowly, and sometimes stop from two to five minutes. When the time arrived for the train to leave an order would be given by one of the foremen to "hurry up," when the men would quickly get upon the cars, the train starting immedi-

ately upon giving the order.   These cars stood "about six feet high from
the track,—the top of it about the height of a man's shoulders."   On some
of the cars there was a hook or iron step on the side, a little ways from the
wheel, for the men to get up by.   When the cars were standing, the men
got up by placing their feet on the side.   "When the train was moving, the
men, in order to get up onto the car, put one hand on the edge of the car,
and the other hand on the car next to it; that is, on the edge of each car,
and jumped up.   *   *   *   That the men always got aboard in the same
way."   The car upon which plaintiff worked was not supplied with a hook
or step, or other appliance by which to get upon the car.   This car, as well
as the one next it, was not supplied with bumpers or dead-woods, or any
other appliance to prevent them from coming immediately together.   On the
occasion of the injury plaintiff was upon the ground, loading ties, when he,
with the others, saw that the engine was about to start.   The order came
from the foreman to "hurry up," and plaintiff started to get on the car.
Some had gotten up,—more than half; others were following.   "The engine
had started very slowly at the time the plaintiff began to get up;   *   *   *
the train was in motion,   *   *   *   was running just nice."   Plaintiff placed
his hands on the ends of the two cars, they being apart, and jumped up.   As
he jumped, and before he cleared the cars, the two ends came together;
caught and crushed one leg, necessitating amputation.   He had never be-
fore seen cars come together in that way.   No instruction or warning was
given by defendant to plaintiff as to getting upon or between the cars.   Plain-
tiff was a foreigner; came to this country on May 7, 1888; could not speak
English, but understood the phrase "hurry up," which the men were obliged
to obey when given.   At the close of the proof defendant moved for a non-
suit upon three grounds:   *First*, that there was an absence of evidence show-
ing negligence on the part of defendant; *second*, that, if there was negli-
gence, it was that of a co-employe; *third*, that the plaintiff was guilty of
contributory negligence.   The court granted the motion upon two grounds:
*First*, that there was no evidence to show that defendant had failed to dis-
charge its duty; and, *second*, that the plaintiff had assumed the risk of such
an injury as the one complained of.

In the orderly disposition of this appeal it becomes necessary to deter-
mine, first, whether the defendant discharged the obligation it was under to
the servant.   The general rule of law is that the master owes a duty to pro-
vide for the servant safe and suitable tools, machinery, and appliances for
use in and about his employment; also, a safe and secure place in which to
perform his duties, and, where necessary, to provide competent and skillful
workmen to direct the servant and assist him in the performance of his
duties.   *Pantzar* v. *Mining Co.*, 99 N. Y. 372, 2 N. E. Rep. 24.   Has this
duty been here performed?   The plaintiff was but recently employed, and
there is nothing showing, or tending to show, that he was possessed of more
information with respect to the cars and the methods of performing the work
than such as he may have gathered during the period of his employment.
The car upon which he was placed at work was provided with no appliances
or means to aid him in alighting therefrom or getting thereon.   It must be
presumed that defendant knew the common mode adopted by the plaintiff
and others, in the course of their employment, in performing these acts, as
duty required them, and acquiesced therein.   *Benzing* v. *Steinway*, 101 N.
Y. 552, 5 N. E. Rep. 449.   It consequently became its duty to take all rea-
sonable precautions to make the dangers as small as possible.   That the
master would so do might be prudently relied upon by the plaintiff.   *Kain*
v. *Smith*, 89 N. Y. 375; *Hawley* v. *Railroad Co.*, 82 N. Y. 370.   It is con-
ceded that the car upon which plaintiff worked, and the one adjoining, was
unprovided with bumpers or dead-woods, or other appliance to prevent the
cars from coming in immediate contact.   Taking into consideration the

course of business, the manner in which the cars were used, would not a due regard for the safety of the workmen require that the cars be supplied with this or a similar appliance for protection? In *Ellis* v. *Railroad Co.*, 95 N. Y. 546, plaintiff's intestate was a brakeman, riding in the caboose, when he noticed the approach of a train in the rear; and, fearing a collision, he stepped from the caboose to its front platform. The car immediately in front was a coal-dump, and the bumpers overlapped, so as to be useless. The collision occurred in the rear, and the dump was forced past the bumpers, upon the steps coming in contact with the front part of the caboose, inflicting death. Judge DANFORTH, in delivering the opinion of the court, says: "Here it was the duty of the defendant to provide a car properly fitted, not only with running apparatus, as wheels, stopping apparatus, as a brake, but with buffers of some kind, to protect the car and its servants necessarily or lawfully thereon from the effect of a collision. Ordinary and usual care in the equipment and running of a road requires this last appliance, or some equivalent contrivance, as much as it does either of the others. There was, in effect, no buffer, or anything to take its place, on the car upon which the intestate was employed. Upon the evidence it may be said that its absence was the proximate cause of the injury." In *Gottlieb* v. *Railroad Co.*, 100 N. Y. 462, 3 N. E. Rep. 344, it was held that the evidence tended strongly to show that the main purpose of bumpers on the ends of freight-cars was for protection of brakemen in the discharge of their duties. It seems quite clear from these authorities that bumpers are a necessary appliance upon any car, for its safety, and also the safety of persons required to be employed upon it. It is quite as necessary that this appliance should be present to prevent cars from coming together as it is for a brake to stop them when upon a down grade; and when, in the course of employment by servants engaged thereon they are or may be required to go between them, to the knowledge of the master, it would seem to be a gross neglect of duty not to provide them. Under the evidence in this case, we think it a fair question for the jury to say whether or not the defendant has discharged the obligations it owed in this regard to plaintiff.

It is, however, said that plaintiff assumed the risk of such injury as he had sustained. It is the rule that upon entering into employment the servant assumes the usual risks and perils of the service, and also such as are incident to the use of machinery and property of the defendant as it then exists, so far as such risks are apparent. *Gibson* v. *Railway Co.*, 63 N. Y. 452. But this rule is subject to the qualifications that the master must first have performed those duties which the law enjoins upon him. *Benzing* v. *Steinway*, 101 N. Y. 551, 552, 5 N. E. Rep. 449; *Ellis* v. *Railroad Co.*, 95 N. Y. 552. Here, as we have seen, the defendant disregarded its duty in furnishing bumpers to the cars. At least, the question as to whether they did or not should have been submitted to the jury. It is true that when the servant accepts employment, and at that time the machinery and implements are of a certain kind or condition, and the servant knows it, he can make no claim upon the master to furnish another or different machine or safeguards, and if he is injured thereby no liability attaches. *Sweeney* v. *Envelope Co.*, 101 N. Y. 520, 5 N. E. Rep. 358. But this rule presupposes knowledge, or opportunities for obtaining which charge the servant with it, equally with the master. In this respect, however, regard must be had to the knowledge of the employe as to the machinery and structures on which he is employed; also, to his capacity and intelligence, and his opportunities for information; and in addition thereto the servant has a right to rely upon the master to protect him from danger and injury. *Powers* v. *Railroad Co.*, 98 N. Y. 280; *Marsh* v. *Chickering*, 101 N. Y. 399, 5 N. E. Rep. 56; *Sullivan* v. *Manufacturing Co.*, 113 Mass. 396. It was also said by Judge FOLGER in *Laning* v. *Railroad Co.*, 49 N. Y. 535: "It is at his option, ordinarily, to accept or to re-

main in the service or to leave it; and, if he remains without promise of a change, or other like inducement, it is for the jury to say whether or not he voluntarily assumes the risks of defective machinery and of incompetent servants, whereof he has full and equal knowledge." The plaintiff here had been in the employ of the defendant a day and a half; had been but a short time in the country. He could not speak our language, and was, presumably, in a large degree unacquainted with the methods of the defendant in the transaction of its business. He had never seen cars come together as these cars came. There is no proof that his attention had ever been called to the lack of proper buffers, or that he had the slightest knowledge upon the subject, or that he had received any instructions in respect thereto. Under such circumstances, we think it proper to submit both questions here discussed to the jury, for their determination. *Fredenburg* v. *Railroad Co.*, 114 N. Y. 582, 21 N. E. Rep. 1049.

The defendant further insists that the injuries here sustained were, in any event, the result of the negligence of a co-employe, and also that plaintiff was clearly guilty of contributory negligence. As to the first claim, it may be said—assuming the injury was caused in part by the negligence of a co-servant—that, if we are right in holding that it was a question for the jury to consider whether the defendant had discharged its obligation in furnishing suitable machinery and appliances, and whether such failure was the proximate cause of the injury, then the authorities already cited dispose of this claim, as it is held that where the negligence of the master concurs with that of a fellow-servant in producing the injury the master is not thereby excused. The second ground is predicated upon the fact that plaintiff boarded the train while in motion, and the claim is made that this is *per se* negligence which contributed to the injury. Defendant relies upon *Hunter* v. *Railroad Co.*, 112 N. Y. 376, 19 N. E. Rep. 820, and *Solomon* v. *Railway Co.*, 103 N. Y. 443, 9 N. E. Rep. 430. In the first of these cases, plaintiff attempted to board a train moving at the rate of from four to six miles an hour. He was charged as matter of law with a negligent act. In the second, plaintiff was nonsuited for attempting to board an elevated railway train, with the movement of which he was perfectly familiar, after the same had started, and when the gates guarding the platform were partly or wholly closed. It was held that he was properly nonsuited. Judge PECKHAM, in the case first cited, delivering the prevailing opinion of the court, says: "There may, undoubtedly, be circumstances under which an attempt to get on or off a moving train would not be regarded as negligence, as matter of law, and where the question of negligence, under all the circumstances of the case, should be submitted to the jury." 112 N. Y. 376, 19 N. E. Rep. 822, citing *Filer* v. *Railroad Co.*, 49 N. Y. 47. Under this rule, which we believe is the latest expression of the court of last resort upon this subject, it is not in all cases *per se* negligence to board or alight from a moving train. As applied to the facts here, we think it a question for the jury. The plaintiff was employed subject to the direction of a foreman. The demands of the business evidently required that the work of loading and unloading should be done with as much rapidity as possible. The order to board the train and the signal for it to move were almost simultaneous acts. The order came from the foreman to "hurry up." The plaintiff started for the train. "The engine had started very slowly at the time the plaintiff began to get up. * * * The train was in motion, * * * was running just nice,"—are the various expressions of the witnesses. From this evidence the jury would be authorized in finding that the train was barely moving when the attempt was made to board it, and that there was but very little if any more danger than when standing. This was the only means furnished by defendant to get aboard, or, at least, it was the usual way in which it was done. He was obliged to get aboard then, or be left; and he then had his orders. Under similar circumstances it

is said: "The law should not be too exacting." *Hawley* v. *Railroad Co.*, 82 N. Y. 372. See *Terry* v. *Jewett*, 17 Hun, 400. Under all the circumstances, we think it presented a question for the jury to say whether such act was negligent or not. It is not entirely certain, if we assume the act negligent, that such negligence was the cause of, or contributed to, the injury. Plaintiff had placed his hands upon each car to swing himself up. He must have succeeded in placing one leg above the car, as only one was caught. The movement of the train did not, so far as the evidence discloses, interfere with his ability to board the car, or prevent him from so doing. What did interfere with such attempt was the absence of an appliance to prevent the cars from closing up. With such protection there, it leaves nothing to show but that the plaintiff could have safely got on board; so that it may not be said with certainty that this action produced the injury. On the contrary, the jury would be authorized to find that the proximate cause of the accident was the closing of the cars permitted by the absence of the bumpers, and that to this cause the accident was solely due. We are of opinion therefore that the exceptions taken should be sustained and a new trial ordered, with costs to abide the event.