JOHN MURPHY, Respondent, v. THE ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 27, 1891.

1.  Railroads: RELATION OF CARRIER AND PASSENGER: INJURY RECEIVED IN BOARDING TRAIN.  A freight train had attached to it a caboose for the carriage of passengers.  On the invitation of the conductor of the train, a person attempted to get on the caboose as a passenger while the train was in motion.  Owing to a sudden lurch of the car he was thrown and injured, but there was no evidence as to the cause of the lurch, further than that the circumstances permitted of the inference that the lurch, was due to the checking of the speed of the train.  *Held* that the relation of carrier and passenger had been established, and that the facts warranted a finding of negligence on the part of the railway company.

2.  ———: BOARDING MOVING TRAIN: CONTRIBUTORY NEGLIGENCE. The attempt of such passenger so to get on said train at the invitation of the conductor was made at daytime ; the passenger was young and active and unincumbered with baggage, and there were no obstructions in his way.  *Held* that, under these circumstances, it was not negligence *per se* for the passenger to make the attempt, if the car was moving no faster than the walk of a person.  But *held* further that there was contributory negligence as a matter of law, if the train was running so fast as to render it exceedingly dangerous to make the attempt, and that such would be the case if the rate was six or eight miles an hour.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Henry G. Herbel*, for appellant.

(1) The court erred in overruling defendant's demurrers to the evidence. *Hunter v. Railroad*, 112 N. Y. 375; *Ecliff v. Railroad*, 31 N. W. Rep. 183; *Achtenhagen v. City*, 18 Wis. 331; *Railroad v. Hazzard*, 26 Ill. 377; *Stager v. Railroad*, 12 Atl. Rep. 821; *Dowling v. Allen*, 88 Mo. 296. (2) The court erred in refusing to give the instructions asked by defendant. *Ecliff v. Railroad*, *supra; Dowling v. Allen*, 88 Mo. 299. (3) The court erred in giving the instructions asked by plaintiff. *Wilburn v. Railroad*, 36 Mo. App. 210; *Railroad v. Canman*, 13 S. W. Rep. 281; *Harris v. Railroad*, 89 Mo. 233; *Railroad v. Hazzard*, 26 Ill. 377; *Stager v. Railroad*, 12 Atl. Rep. 821; *McCarthy v. Railroad*, 92 Mo. 541; *Boland v. Railroad*, 36 Mo. 490; *Williams v. Railroad*, 96 Mo. 283.

*A. R. Taylor*, for respondent.

(1) The defendant's train being engaged in carrying passengers, though a freight train, was bound in receiving and carrying its passengers to have used care commensurate with the danger. If defendant chose to carry passengers on freight trains, its servants were bound to use a high degree of care to preserve the passenger from injury. *Tibby v. Railroad*, 82 Mo. 300; *Graham v. Railroad*, 66 Mo. 536; *Dougherty v. Railroad*, 97 Mo. 654. (2) The evidence was sufficient to go to the jury on the question of invitation by the conductor to get on, and the lurch of the car as a negligent act. *Dougherty v. Railroad, supra*. (3) The second instruction given for plaintiff, and complained of, is in full and strict compliance with the law as laid down by the supreme court of this state from the case of *Donohoe v. Vulcan Co.*, 75 Mo. 401, to the last decision, as

an inspection of cases cited for appellant will show. The instruction distinctly told the jury that, in passing upon the question of plaintiff's negligence, they should consider his age and discretion.

BIGGS, J.—This is a case of personal injury. The plaintiff obtained a verdict and judgment for $2,000. The defendant appeals.

At the close of the testimony the defendant asked the court to instruct the jury that, under the pleadings and evidence, the plaintiff could not recover. The court declined to do so, and this adverse ruling constitutes the defendant's first assignment of error.

This assignment is sought to be sustained on two grounds: *First.* That the evidence failed to show that the alleged cause of the injury was produced by the negligence of the defendant's servants in running the train; *second,* that the undisputed evidence showed that the plaintiff's own negligence and recklessness contributed directly to his injuries.

To dispose of this assignment we will have to examine the pleadings and the evidence, upon which the plaintiff relies to uphold the judgment. The averments of the petition were to the effect, that the plaintiff went to a flag station on the defendant's road in the state of Arkansas, for the purpose of taking passage on one of the defendant's trains; that the train which he expected to take was a freight train with a caboose attached; that this train carried passengers, and that it was accustomed to stop at the flag station, when passengers wanted to get on or off, or when the train had freight for that station; that, when the train approached the station, the plaintiff gave the signal to stop; that in consequence the train slacked its speed, and, when the locomotive reached the point where the plaintiff was standing, the conductor of the train, who was riding on the engine with the engineer, told the plaintiff to get on; that he attempted to get on the

front platform of the caboose, and that in doing so he was thrown under the train, thereby receiving injuries which necessitated the amputation of one of his feet. It was averred that, when the plaintiff attempted to get on the train, it was running very slowly, and that he was thrown under the cars by reason of a motion of the train, produced by the negligence of the defendant's servants in charge of the same. The negligence charged was that the defendant failed to stop the train, and that, by reason of its speed or motion, negligently produced by the defendant's servants, the plaintiff was injured,

The plaintiff's evidence tended to show that, at the time he received the injuries, he was between fourteen and fifteen years old, and that his father sent him to the flag station for the purpose of taking the train for Arkadelphia; that, when he arrived at or near the platform of the station, the section-hands, who were putting in a new switch at the station, gave a signal to the approaching train, when distant about one-fourth of a mile, to run slowly over that portion of the road; that the engineer obeyed the signal by sounding the whistle for brakes; that the train came up to the station running at the rate of four miles an hour, or as the plaintiff himself put it, "about as fast as he could walk;" that, just before the train got to where the plaintiff was standing, he gave a signal for it to stop; that the train was running south, and when the locomotive reached the plaintiff he was standing about fifty feet north of the platform, the usual place for getting on this train; that the conductor was riding with the engineer on the engine, and, when they passed the plaintiff, the conductor called to him to hurry up and get on; that there-upon he walked about one hundred feet in the opposite direction from which the train was running, and when the caboose was opposite to him he attempted to get on it; that he succeeded in getting on the steps of the front platform, when the train gave a sudden jerk or

lurch which caused him to be thrown from the train to the ground, so that one of his feet was run over and crushed by the hind trucks of the caboose. The plaintiff's evidence also tended to show that the place, where he attempted to board the train, was the usual place where passengers got on and off such trains. There was no direct evidence on either side as to the cause of the sudden jerk or lurch of the train. The defendant's evidence was flatly contradictory, except that the sectionmen were working at the station, and gave the train a signal to slow up ; and that, in obedience to this signal, the brakes were applied and the speed of the train checked.

We are of the opinion that the first ground of nonsuit is untenable. The plaintiff's evidence showed that he was thrown from the caboose by reason of a sudden jerk or lurch of the train. The argument is now made that there is no direct proof that the sudden jerk was occasioned by the acts of the persons in charge of the train ; that, for aught that appears in the record, the lurch was produced by natural causes, over which the defendant's servants had no control ; and that this state of the proof left the cause of the lurch a matter of conjecture which would prevent a recovery.

Whether the plaintiff at the time he received the injury was a passenger on the defendant's train, or occupied the position of a stranger, cuts some figure in determining the sufficiency of the plaintiff's proof to establish a liability of the defendant. If the plaintiff's evidence is to be credited, he occupied the relation of a passenger at the time he received the injuries. The actual entry into the cars, and the payment of fare, are not essential to create the relation of passenger and carrier. *Cleveland v. Steamboat Co.*, 68 N. Y. 306 ; *Gordon v. Railroad*, 40 Barb. 546 ; *Smith v. Railroad*, 32 Minn. 1 ; *Allender v. Railroad*, 37 Iowa, 264 ; *Brien v. Bennett*, 8 Car. & P. 724 ; Hutchinson on Carriers, secs. 556, 562 ; Shearman & Redfield on Neg. [ 4 Ed.]

sec. 490. In *Smith v. Railroad, supra,* the court said: "The rule is not inflexible that, to entitle a person to such protection (that of a passenger), he must be actually within the vehicle or upon some portion of it. Otherwise he might in good faith, and in the exercise of due care, place himself in a position of peril in the act of taking passage, upon the consent and invitation of the carrier, and the latter be bound to the exercise of ordinary care only." Under the foregoing authorities we are justified in holding that the invitation of the conductor to the plaintiff to get on, and the attempt of the latter to do so, gave rise to an implied contract of carriage, and established between the plaintiff and the defendant the relation of passenger and carrier.

The objection that is now urged was presented in the case of *Dougherty v. Railroad,* 81 Mo. 325. The evidence in that case showed that the plaintiff, after getting on the street car and before he could procure a seat, was thrown down by a sudden jerk of the car. There was nothing to show the cause of the jerk. The defendant argued that there could not be a recovery, because there was no direct proof that the sudden movement of the car was occasioned by any act of the driver or team. The court in passing on this objection stated the rule to be: "That, where the vehicle or conveyance is shown to be under the control or management of the carrier or his servants, and the accident is such as, under an ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

The argument may be made that this rule cannot govern the present case for the reason, that freight trains in the usual and ordinary manner of operating them are subject to sudden jerks, which may be produced by causes over which the trainmen have no control whatever. If the sudden lurch of which plaintiff

complains had happened under ordinary circumstances the argument might be good, but the undisputed facts raise the reasonable presumption that the jerk was occasioned by the motive power, to-wit, the engine. When the train was about one-fourth of a mile from the station it was running at the rate of about eighteen miles an hour; at this point the section-men gave the signal to slow up; the brakes on the train were immediately set, and the speed checked to such an extent that, when the locomotive reached the platform, it was, according to the plaintiff's evidence, running at the rate of four miles an hour. Under such circumstances the reasonable presumption would be that the cars would crowd onto the engine, and that a sudden jerk or forward movement of the caboose would be produced by the act of the person in charge of the engine. As was said in the *Dougherty case:* "Presumptions arise on the usual and natural course of things. One of the chief grounds of evidence is the known and experienced connection between collateral facts and circumstances satisfactorily proved, and the fact in controversy. As the team and brake are the means by which a stationary car is put in motion, when the movement was forward, in the direction of that power, it is hardly reasonable to say that it is merely conjectural that the motion came through the agency of the driver. Had the car been thus suddenly and violently jerked by the application of some other external force, not under the control of the driver, it would have been unusual and outside of the ordinary course of things. In such case it would certainly be reasonable to require the defendant to show such fact so peculiarly within its knowledge." So in the present case, if the sudden jerk was produced by agencies beyond the control of the defendant's engineer, it is a more reasonable rule to require the defendant to show such fact, than to impose the burden on the plaintiff who could not be expected to have any information on the subject.

We are not prepared to say, as a matter of law, that the plaintiff was guilty of contributory negligence in attempting to get on the train, if, in point of fact, it was running no faster than a man could walk, and he was invited to do so by the conductor. There are authorities which hold that it is contributory negligence for a person to get on or off a moving train, however slowly it may be running. *McClintock v. Railroad*, 21 W. N. C. 133; *Railroad v. Aspell*, 23 Pa. St. 147; *Hunter v. Railroad*, 112 N. Y. 371. But the law is different in this state. *Clotworthy v. Railroad*, 80 Mo. 220; *Leslie v. Railroad*, 88 Mo. 50; *Doss v. Railroad*, 59 Mo. 27; *Wyatt v. Railroad*, 55 Mo. 485; *Karle v. Railroad*, 55 Mo. 476; *Loyd v. Railroad*, 53 Mo. 509; *Smith v. Railroad*, 61 Mo. 588; *Meyer v. Railroad*, 40 Mo. 151; *Kelly v. Railroad*, 70 Mo. 604; *Nelson v. Railroad*, 68 Mo. 593; *Fortune v. Railroad*, 10 Mo. App. 252; *Straus v. Railroad*, 75 Mo. 185; *Swigert v. Railroad*, 75 Mo. 475. In the case of *Leslie v. Railroad, supra,* the court said: "For one to jump from a train of steam cars, while in rapid motion, voluntarily, and not to avoid some threatened danger, is negligence, but to step from a car, while in motion, to a station platform, may or may not be negligence; whether it is or not, is a question of fact for the jurors to determine from all the circumstances. It would be better in such cases to submit the question by leaving it to the jurors to determine whether a prudent person in a like situation and under like circumstances would have made the step or leap." In the case of *Doss v. Railroad,* 59 Mo. 27, it was said: "For a person to jump from a car propelled by steam, when it is in rapid motion, may be regarded as mere recklessness; but to step from a car not yet beyond the platform, and whose motion is so slight as to be almost or quite imperceptible, may not be negligence, and whether it is or not, is for the jury to decide from the physical condition of the person and all the attendant circumstances. A young,

healthy and vigorous man may assume risks, which would be culpable negligence in another of feeble health or protracted age." In *Wyatt v. Railroad*, 55 Mo. 485, we find the following : " Whether it would be safe or prudent for a young man of seventeen to alight from a street car going at the rate of *four or five miles* an hour, which may be assumed as the maximum speed of ordinary draft horses on a trot, is a question proper to be submitted to a jury, and whether the refusal of the conductor to stop at the point where the boy wished to stop, and his order to jump might not have prompted the boy to a precipitate and unwise determination, and thus relieved him of any imputation of rashness and recklessness, seem to be appropriate questions of fact for the determination of a jury. A review of the decisions of this court on this subject, which, of late years, have been numerous, would only show that each case depended very much on its own peculiar facts." In the case of *Meyer v. Railroad*, 40 Mo. 151, the railroad company was sued for the negligence of one of its conductors in putting the plaintiff off one of its trains. It was said : " From the evidence it appears that the train was just starting and going at a remarkably slow rate of speed, and, if an attempt was made to put Meyer off, it was a fact that should have been submitted, whether it was done negligently or in a way to endanger life. To attempt to put a person off a train when it is under full headway, or in the night at a dangerous place, would unquestionably be deemed gross carelessness and highly improper conduct, and a court would be fully warranted in so declaring it ; while expelling a man, when the cars were scarcely in perceptible motion, might be devoid of all hazard and without any negligence." In the case of *Nelson v. Railroad*, 68 Mo. 593, the supreme court, speaking through Judge HOUGH, said : " If a passenger, by the negligence of the agents of the railroad company, is carried beyond the station where he has a right to be let off, he can

recover for the inconvenience, loss of time, labor and expense of traveling back; but if he leaps from the train while in rapid motion, in order to avoid being carried beyond his stopping place, he does so at his own risk." In the case of *Straus v. Railroad*, 75 Mo. 185, we find this statement: "Or if an insufficient period of time was allowed the plaintiff for safe and convenient egress from the cars, but, before he attempted to alight, the train was started, and he then jumped from the train while its motion was still so slight as to be almost imperceptible, and was injured, it was for the jury to determine, from the age and physical condition of plaintiff and the attendant circumstances, whether such act constituted negligence." In the case of *Swigert v. Railroad*, 75 Mo. 475, the court, in commenting on an instruction given by the court on the defendant's motion, said: "The defendant's fourth instruction *erroneously* declares the effort of the plaintiff to get on the train, while in motion, to be negligence *per se*, without regard to the speed of the train, or the fact that it may not have been stopped a sufficient length of time to enable the plaintiff to get on before it started again."

Under the foregoing authorities we are inclined to the opinion that it is not necessarily negligent for a person to attempt to get on or off a train moving at the rate of four miles an hour. Our common knowledge and experience teaches us that, under favorable circumstances, this may be done with comparative safety. Under certain conditions or environments such an act might be held to be legal negligence. But, on the other hand, if it was in the daytime, and there were no obstructions in the way or other hindering causes, a case would be presented in which fair inferences might be drawn both ways. It is, therefore, impossible, to formulate a rule by which all cases can be governed. Each case must stand or fall on its own peculiar facts. In the present case the plaintiff was young and active; he was

not incumbered with baggage ; it was in the daytime ; and there is nothing to show that there were any obstructions or obstacles in the way. Under this proof we think the court was right in refusing to nonsuit the plaintiff on the ground of contributory negligence.

In the case of *Hunter v. Railroad*, 112 N. Y. 371, upon which the plaintiff chiefly relies, it was expressly stated in the opinion that the plaintiff was a man of full age and mature judgment, and that, for this reason among others, his attempt to get aboard a train running at the rate of four miles an hour, must be held to be contributory negligence. In the present case the plaintiff was a youth ; and, while it may be said that he was familiar with trains, and knew as much about the dangers attending their operation as an adult, yet his actions cannot be judged by the same standard which is usually applied to the conduct of persons of full age. He may have possessed the requisite knowledge, but on account of his age he may have lacked discretion or judgment. We do not mean to intimate or decide that there may not be cases, in which legal negligence may be imputed to a boy of fifteen years of age, who is of average intelligence. But what we mean to say is that, when the case is on the border line, the tender age of the complainant furnishes an additional reason for the submission of the question to the jury.

The defendant next complains of the instructions. Plaintiff's first instruction is not open to the objections urged against it by the defendant's counsel. The plaintiff's right of recovery was not predicated on the negligence of the conductor in his direction to the plaintiff to get on the train while it was in motion.

The plaintiff's second instruction told the jury that, in determining the question of contributory negligence, they should consider the age and discretion of the plaintiff, and that the law required of him the exercise of that care that a boy of his age would ordinarily use under like circumstances. There was no direct evidence

Murphy v. The St. Louis, I. M. & S. Ry. Co.

in the case as to plaintiff's capacity ; hence, the court did right in so directing the jury. We understand this to be the law in this state.

The defendant's evidence was to the effect, that the train was running at the rate of six or eight miles an hour. Its counsel asked the court to direct the jury that, if the train was running at that rate of speed, the plaintiff was guilty of legal negligence. The question presented is somewhat perplexing. All judges must admit that the speed of a train may be such that it would be foolhardy for a person under any circumstances to attempt to get on or off. But the rate of speed which will authorize a court to so direct a jury is the troublesome question. The rule is that, if the train is running so fast that to get on or off would be exceedingly dangerous, then such act must be held negligent as a matter of law. It is very easy to state the rule, but its application in some cases must, of necessity, appear arbitrary. "It is one thing," Judge WOODWARD observed in the *Pennsylvania Ry. Co. v. Kilgore* (32 Penn. St. 292), "to define a principle of law, and a very different matter to apply it well ; the rights and duties of parties grow out of the circumstances in which they are placed." This is the reason why we find so great a diversity of opinion on the question of negligence in the adjudicated cases. There is, and can be, no well-defined rule on the subject ; hence, the courts in New York (*Hunter v. Railroad, supra*) decide that it is legal negligence for a person to get on or off a train moving at the rate of four miles an hour ; whereas the supreme court of this state holds that whether the same act is negligent or not, must depend upon the att ⁻ding circumstances ; that contrary inferences may be 1.    ⁻⁻wn, and that the question should be submitted to ₍       If to get on or off a train running at the rate o1 _ ₁r miles an hour is not negligence *per se*, would such an act be so regarded if the train was running at twice that rate of

speed ? In our opinion, it would be, and this opinion is based on our knowledge and experience in such matters. While we are satisfied with this conclusion, yet we must confess that it has the appearance of being somewhat arbitrary. But the limit must be placed somewhere. While the supreme court holds that the fact that the train was in motion will not necessarily defeat a recovery, yet the intimations in many of the decisions are that the movement must be very slow and scarcely perceptible. We think that we have stretched the rule to its utmost limit in holding that the plaintiff's case ought to go to the jury on his evidence. We, therefore, conclude that the defendant's instruction ought to have been given, and that, for this reason, the judgment in the case will have to be reversed, and the cause remanded.

In view of a retrial we would suggest that the plaintiff's evidence tends to show that the accident was occasioned by a sudden jerk of the train while he was in the act of getting aboard the caboose. This particular issue is not clearly but only inferentially made by the averments in the petition. We think the petition ought to be so amended as to squarely tender that issue. Judge THOMPSON concurs in the opinion as written. Judge ROMBAUER agrees as to the result.