# NORTHERN PACIFIC RAILROAD COMPANY *v.* EGELAND.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 288. Argued and submitted April 20, 1896. — Decided May 18, 1896.

When, in an action by a railroad employé against the company to recover damages for injuries suffered while on duty, the inference to be drawn from the facts is not so plain as to make it a legal conclusion that the plaintiff was guilty of contributory negligence, the question whether he was or was not so guilty must be left to the jury.

The defendant in error, plaintiff below, was a common laborer in the employ of the plaintiff in error. When returning from his work on a train, the conductor ordered him and others to jump off at a station when the train was moving about four miles an hour. The platform was about a foot lower than the car step. His fellow-laborers jumped and were landed safely. He jumped and was seriously injured. He sued to recover damages for those injuries. *Held,* that the court below rightly left it to the jury to determine whether he was guilty of contributory negligence.

THE case is stated in the opinion.

*Mr. C. W. Bunn* for plaintiff in error submitted on his brief.

*Mr. Henry J. Gjertsen* for defendant in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This action was brought in the United States Circuit Court for the District of Minnesota, Fourth Division, by the plaintiff against the railroad company to recover damages which he alleged he had sustained by reason of the neglect of the agents and servants of the company. The plaintiff had a verdict, and the judgment entered thereon was affirmed by the United States Circuit Court of Appeals for the Eighth Circuit. 12 U. S. App. 271.

The questions in the case arise on the exceptions taken to the refusal of the court to instruct the jury as follows:

" First. That there is no negligence shown on the part of

the defendant which would entitle the plaintiff to recover a verdict against the defendant.

"Second. That even if there should be any negligence shown on the part of the defendant, yet the plaintiff was guilty of such contributory negligence that he could not recover in this action."

The only ground for a new trial urged upon us has been the second of the two just stated, and we shall confine the discussion to that ground alone.

Upon the trial, evidence was given upon the part of the plaintiff tending to show that he was one of a section crew going out to work on the defendant's road and coming back daily. He and the rest of the crew were brought to their work and taken back from it by the defendant in a train consisting of a caboose and several flat cars drawn by an engine, all under the control of one Potter, the conductor. Potter controlled all the men, including plaintiff, from the time they boarded the work train in the morning until they left the train in the evening, and during the day directed the men, including the plaintiff, what work to do. Returning on the train from his day's work by daylight on September 13, 1890, plaintiff was in the caboose, as it neared the Lake Park station, where he and some others of the crew were to leave the train. The train slowed down as it came to the station and was running between four and five miles an hour when Potter, the conductor, gave orders to the men to get off. Three of the crew jumped down upon the platform of the station, which was about a foot below the car step. They landed safely, and plaintiff was then ordered by Potter, the conductor, to jump. He threw his shovel and dinner pail on the platform so that he might more easily get off himself, and then jumped in the direction in which the train was moving, supposing that was the safest way. He landed on the platform, and then in some way fell and hurt himself. He jumped because, as he said, he was told to by the conductor, and because he thought he could do so safely, or the conductor would not have given the order. He relied on the conductor's direction at the time he jumped, and at that time the train,

which had been slowing up, was going not faster than four miles an hour.

These are the principal and material points in the case which the plaintiff's evidence tended to establish as facts. It must be upon the assumption that they are facts that the defendant's requests to charge as above set forth are to be treated.

The trial judge, after the refusal to charge as requested by the defendant, did charge, among other things, as follows:

"I instruct you that to jump off a railroad train moving at a rate of speed of four or five miles an hour is presumably a negligent act *per se*, and that in order to rebut this presumption of negligence and recover for an injury sustained from so jumping the plaintiff must satisfy you that he was ordered and directed to do so by the conductor, Potter, and he must do that by a preponderance of evidence. Plaintiff admits the jumping, and he attempts to excuse the act, and in order to do that he must satisfy you that Potter ordered and directed him so to do, and also that the order was calculated to divert his attention from the danger of jumping, or that the order created a situation which interfered with his free agency to some extent, and such order created a confidence that the attempt could be made with safety.

\*        \*        \*        \*        \*

"If the danger to be met by jumping was manifestly great, it was obviously dangerous, so that an ordinarily prudent person in the same situation would not have jumped, then it was contributory negligence to obey the direction of the conductor, if the same was given. But if the danger was not so great under the circumstances but that the plaintiff might reasonably believe that he could obey it by taking proper care, particularly as his superior commanded it, and if his purpose was to obey in pursuance of his sense of duty, and without waiting to think or consider the risk and danger he jumped, then it would not be contributory negligence to obey and jump. So the question that presents itself for your determination is, whether under all the circumstances of the case, if you should come to the determination that this instruction or com-

mand was given by Potter to jump when the train was running at the speed testified, whether the plaintiff under those circumstances had the right to rely upon the order, whether he was justified in reasonably believing that he could make the attempt with safety. If the order was not given and he voluntarily jumped off the train, seeing that the others had done so in safety, and he thought he could do the same, then he took the risk; and if in consequence of so jumping he was injured he could not recover because it would be contributory negligence on his part. On the other hand, if the company was negligent and brought this injury upon the plaintiff entirely by its negligence and without any fault on his part, if you find that from the evidence, then the question would be what compensation shall he have for the injuries he has sustained, or what amount will remunerate him for the injury he has suffered."

The charge as above given was duly excepted to by the plaintiff in error, and it is now urged on its behalf that it was erroneous to submit the question of contributory negligence on the part of the plaintiff to the jury, and that the court should have decided as a matter of law that the plaintiff was guilty of such negligence, and should have instructed the jury to return a verdict for the defendant on that ground.

Two cases are cited on behalf of the company as authority for the position taken on its behalf. They are *Railroad Company* v. *Jones*, 95 U. S. 439, and *Kresanowski* v. *Northern Pacific Railroad*, 18 Fed. Rep. 229. The case last cited follows the case in 95 U. S., and both are claimed to be fatal to the right of the plaintiff to recover in this action.

We think the difference between the cases cited and the case at bar is clear and material. The persons injured in those cases were seated, in the first case, on the pilot of the engine, and in the other on the front beam of the engine with his feet over the pilot. The positions were most dangerous, and the danger was plain and obvious at the first sight. No other place on either train was as dangerous, and yet each of the plaintiffs substantially selected his position as a fit and proper place to ride in. The great and obvious danger of the posi-

tions in which the plaintiffs voluntarily placed themselves is the material and controlling fact upon which the cases were decided. So great and so obvious was the danger that when it was urged as an argument in this court that the plaintiff in the *Jones case* had been ordered to ride where he did, and that such order constituted an excuse, the court replied " as well might he have obeyed a suggestion to ride on the cow-catcher, or put himself on the track before the advancing wheels of the locomotive." In neither of the two cases cited was there in truth an order to ride on the pilot. In the *Jones case* the plaintiff had been warned about riding on the pilot and forbidden to do so. There was room for him in the box car which was a part of the train, and he could have gone into it in as little if not less time than it took to climb to the pilot. The only foundation for the claim that he was directed to do as he did is found in the statement that when the party was about to leave on their return that evening the plaintiff was told by Van Ness, who was in charge of the laborers when at work, " to jump on anywhere; that they were behind time and in a hurry." To that the court remarked : " The knowledge, assent or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late and that he must hurry, this was no justification for taking such a risk. . . . His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit."

In the case in 18 Fed. Rep., it simply appeared that there was not room on the engine for all the men who wished to ride upon their return from their work, unless some rode on the pilot. There is no pretence of a direction given to ride there, and even if there had been it would constitute no justification for thus riding, under the rule as given in the *Jones case, supra.* Both these cases, therefore, stand on the same ground, which is the exceedingly dangerous position taken by the plaintiffs upon the engines, the danger of which was open and obvious to every one, and it was therefore held that the

necessary inference or legal conclusion to be drawn from these uncontradicted facts was that the plaintiffs, in their choice of positions on the engines, were guilty of negligence directly contributing to the injury.

In this case the question of negligence depends upon the material difference in the facts, and we are of the opinion that the inference to be drawn from those facts was not so plain as to be a legal conclusion, but was one for the jury to determine. In this case the plaintiff was a servant, a common laborer, in the employment of the company. He was returning from his work on a train provided by the company, and that train was under the command of Potter, the conductor, who was also the direct superior of the plaintiff and the controller of his movements while at work. The plaintiff would naturally, therefore, be inclined to obey the orders of such superior, particularly if they were not of an obviously very dangerous character. Bearing upon the question of danger was the speed of the train at the time the plaintiff jumped. It was then going about four miles per hour, quite slowly; the platform of the station was but about a foot lower than the car step; it was broad daylight; three of his fellow-laborers, in obedience to the orders of the conductor, had themselves jumped and landed safely upon the platform; the plaintiff states that he jumped because of this order, and he says he relied on it, supposing he could jump safely or else the order would not have been given. Taking all these facts together, ought it to be said, as a necessary legal inference therefrom, that the plaintiff in obeying this order was guilty of such an obviously dangerous act as to constitute contributory negligence on his part? The act of jumping under such circumstances cannot, with any re-- gard to common sense, be regarded as of the same obviously dangerous character and to as great an extent as that of riding on the pilot of an engine. If plaintiff reasonably thought he could with safety obey the order by taking care and jumping carefully, and if because of the order he did jump, the jury ought to be at liberty to say whether under such circumstances he was or was not guilty of negligence. If the train had been going at the rate of thirty, or even fifteen, miles per hour,

the chance of injury resulting from a jump would have been so great that plaintiff would probably have obeyed such an order at his own risk. We think a speed of four miles an hour, considering all the facts hereinabove detailed and including the direction to jump, left the question of contributory negligence one for the jury. In this respect we think the trial judge was correct.

This is a different case from one where a would-be passenger at a railroad station attempts to board a passing train while it is in quite rapid motion because of the statement of the conductor on the train that if he wants to take that train he must jump on, as it would not stop. *Hunter* v. *Cooperstown & Susquehanna Valley Railroad,* 112 N. Y. 371. Here there is an element of obedience to the command given by the person in charge of the train and of the crew, and given to a common laborer, and upon a matter where the jury might find the danger was not so great and so obvious as to render obedience to the order a risk of the person obeying.

The case was left for the decision of the jury upon all the facts to say: First, whether the defendant was guilty of negligence in not stopping and giving the order referred to; and, second, if it were thus guilty, whether the plaintiff was himself guilty of negligence contributing to the injury. The jury found in favor of the plaintiff on both the above questions, and we do not think that we ought to interfere.

The judgment should, therefore, be

*Affirmed.*