## WINTERS v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Sixth Circuit. January 4, 1910. On Petition for Rehearing, March 29, 1910.)

No. 1,924.

1. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO EMPLOYÉ—NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, as an employé, was being carried with others on a work train along a switch track of defendant's railroad incidentally to his employment, when the car on which he was riding was derailed by striking a loose plank at a crossing, and plaintiff received an injury for which he brought suit. The crossing had been in for several years, and the track there had recently been repaired; but it appeared that both before and after the repairs the planks and other materials used in making the crossing were not spiked down, but left loose and were liable to be moved out of place by crossing wagons. *Held* that, aside from any question of presumption arising from the accident itself, there was sufficient evidence to require the submission of the question of defendant's negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1021–1022; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 198*)—MASTER'S LIABILITY FOR INJURY TO. SERVANT—FELLOW SERVANTS.

A member of a floating track gang on a railroad, which was carried by a work train to and from its places of work, was not a fellow servant with the employé charged with the duty of keeping the track in a safe condition for the passing of trains, which duty was that of the master, and was not precluded from recovering from the railroad company for an injury resulting from the defective condition of the track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 493–514; Dec. Dig. § 198.*]

3. NEGLIGENCE (§ 136*)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

When, in an action to recover damages for a personal injury, the inference to be drawn from the facts is not so plain as to make it a legal conclusion that the plaintiff was guilty of contributory negligence, the question must be left to the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

4. NEGLIGENCE (§§ 68, 82*)—CONTRIBUTORY NEGLIGENCE AS PROXIMATE CAUSE OF INJURY.

To constitute contributory negligence, which will prevent a plaintiff from recovering for the negligence of defendant resulting in his injury, there must have been a want of ordinary care on his part, combining and concurring with the negligence of defendant, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 92, 112; Dec. Dig. §§ 68, 82.*]

5. NEGLIGENCE (§ 59*)—PROXIMATE CAUSE OF INJURY—NATURAL AND PROBABLE CONSEQUENCES.

To warrant a finding that negligence or an act not amounting to wanton wrong was a proximate cause of an injury, it must appear that the injury was the natural and probable result of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. NEGLIGENCE (§ 136*)—ACTIONS—QUESTIONS FOR JURY—PROXIMATE CAUSE OF INJURY.

The question as to what was the proximate cause of an injury is ordinarily one of fact, for the jury to determine in view of the surrounding circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 327–332; Dec. Dig. § 136.*]

7. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.

Plaintiff, a track hand employed on defendant's railroad, while being carried with others on a work train in the course of his employment along a switch track, was injured by the derailment of the car on which he was riding, caused by its striking a plank used in making a crossing, and which was not spiked down, and had become displaced, and lay across the rail. The train was moving at a speed of only five or six miles an hour, and plaintiff was sitting on the top of one of the work cars with a brakeman, while his fellow workmen were inside another car and were not injured. It appeared that the workmen were in the habit of riding on the tops of the cars, as well as inside, to the knowledge of the foreman and conductor, who made no objection. *Held,* that in view of such fact, and that the train was moving on a switch track at a slow speed, plaintiff could not be held as matter of law to have been guilty of contributory negligence, but that the question was one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

On Petition for Rehearing.

8. TRIAL (§ 165*)—DIRECTION OF VERDICT—INFERENCES FROM EVIDENCE.

On a motion by defendant for direction of a verdict, the court should not draw inferences from the proof against the plaintiff in matters which may be subject to reasonable explanation, or exclude from consideration an explanatory hypothesis favorable to the plaintiff and consistent with the evidence; but, on the contrary, the plaintiff is entitled to the benefit of every inference in his favor which may fairly be drawn from the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

9. MASTER AND SERVANT (§§ 101, 102, 229*)—PLACES TO WORK—CARE REQUIRED OF MASTER AND SERVANT RESPECTIVELY.

Because it is the primary duty of a master to use reasonable care to see that the place where the servant is required to work is safe, on the performance of which the servant has the right to rely. while both are required to use reasonable care, the master is bound to a higher degree of care than the servant to know the condition of such place.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171–184, 674–683; Dec. Dig. §§ 101, 102, 229.*]

10. MASTER AND SERVANT (§ 288*)—ASSUMPTION OF RISK—WHEN QUESTION FOR JURY.

In an action by a track hand on a railroad to recover for an injury caused by the derailment of a car on which he was riding in connection with his work, caused by the defective condition of the track. where the evidence did not show clearly and conclusively that plaintiff knew the condition of the track, or that he was working up to the time of the injury in such proximity to the place that its condition was plainly observable to him, the question of his assumption of the risk was one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action by Edward Winters against the Baltimore & Ohio Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

See, also, 163 Fed. 106.

Frank S. Monnett, for plaintiff in error.

Frank A. Durban, for defendant in error.

Before WARRINGTON, Circuit Judge, and McCALL and SANFORD, District Judges.

SANFORD, District Judge. This is an action brought by the plaintiff in error, Winters, against the defendant railroad company, to recover damages for personal injuries sustained by him through the alleged negligent derailment of a car in a work train of the defendant on which Winters was riding. At the close of the testimony offered by the plaintiff, the defendant moved the court to direct a verdict in its favor on the ground, in effect, that the testimony failed to establish its negligence and showed that the plaintiff was guilty of contributory negligence. The court, while of opinion that there was evidence to go to the jury of the defendant's negligence, sustained the motion on the ground that the plaintiff had been guilty of contributory negligence and directed a verdict in the defendant's favor.

The errors assigned all relate to the action of the court in thus directing the verdict. The material facts appearing from the testimony are as follows:

The plaintiff, Winters, was a section hand in the employ of the defendant company as a member of a "floating gang" of about 20 men engaged in repairing track at different points along the line of road, in a section about 33 miles long, extending from Columbus to Newark, Ohio. In doing this work they were carried from point to point on the road in a work train, consisting of an engine, caboose, and two box cars, or camp cars, and other cars when needed. This work train took the men back and forth to and from Pataskala, their headquarters, where they stayed at night. The plaintiff, who had been a member of this gang several months, testifies that he "most generally rode any place" on this train; that whenever they got ready to go, the section foreman would tell them to "get on," without saying where, and they got on wherever they could; that he and the other men rode any place on the train, and rode on top of the cars about all the time when going backwards and forwards; that this was done in the presence of the section foreman, who himself rode up there with them, while the train conductor would also always see them up there, although he did not ride up there himself; and that they had kept this up all summer.

On the day of the accident, November 15, 1905, the work train had been hauling stone in flat cars at Union Station, but in the afternoon took off the flat cars at Summit Station, leaving only the engine, caboose, and the two camp cars, and went to Taylor's. At Taylor's the work train backed in on a switch about three-fourths of a mile in length leading to a tile or brick plant, and ran northward on this

switch in order to get some Italian laborers working in there, ditching the track; the purpose being after getting them to go back home to Pataskala, which was about eight miles away. In backing in on this switch the engine was farthest south; next, the caboose; next, the camp car of the Italians; and, last, the camp car of the "floating gang," which was at the north or front end of the train as it backed in.

In running from Summit to Taylor's, Winters had ridden in the caboose; but when the train stopped to let them in on the switch he got out of the caboose and climbed up on top of the camp car of his gang, at the north or front end of the train, as it backed in. He found the brakeman on top of this car, and they continued to ride on top together. All the other members of the work crew were in their camp car. It was then about 4:45 p. m., and just about dusk. The train was running about five or six miles an hour. At the time of the accident the train was running northwestwardly. Winters and the brakeman were looking west toward the brickyard. When near the brickyard the brakeman said there was a plank on the track, "right onto it, the way he talked," and halloed, "jump." The brakeman then jumped from the car, and Winters jumped after him in the same direction. The north or front trucks of the camp car on which he was riding were thrown off of the track; and while the brakeman jumped clear of the train, Winters landed between the tracks, and his leg was caught about the knee, and run over by the south trucks of the car, which did not leave the rails; the train stopping in a short distance after the north pair of trucks left the rails. His leg was so badly crushed that it had to be amputated. The other members of the "repair gang" riding inside of the camp car appear not to have been injured.

A subsequent examination of the track showed that just at the point where the switch track was crossed by a wagon road that led across to the brickyard, part of the material in the crossing had been carried off to the north, including a plank six or eight feet long, about two inches thick, and six to eight inches wide, which was found lying crosswise of the track, across one rail, at the north end of the camp car, from six inches to a foot from the north trucks; this plank having some splinters knocked off and showing fresh wheel marks. It further appeared that the switch track leading from Taylor's to the brickyard had been there for some five or six years, since the brick plant was started, and was used by the railroad company every day to take brick out from the brick plant, running some five or six trains every day. The road crossing at which the derailment occurred had been there for some years. It was the crossing that gave access to the brick plant, and was also used generally by the people who lived across the switch track, and crossed daily by a number of foot passengers and two or three wagons.

A short time prior to the accident this switch track had been raised at this point by the gang to which Winters belonged. They had worked on the track a couple of weeks altogether, off and on, and had worked close to this crossing for several days, raising the track along there from six inches to a foot. One witness states that they had been working there from two weeks to eight days before the accident; an-

other that they had worked there up to the time of the accident. It further appeared that there had formerly been thrown in this crossing planks of different lengths, ties, and fence rails; that when the "floating gang" began work at the crossing they threw this material out, and after they had raised the track they put back the old planks, ties, and fence rails in the crossing, without spiking or nailing down either the planks or fence rails; and that after this repair work had been done these planks and rails remained as before, so loose that when a buggy passed over the crossing they would flop up and down, and would give up and down when a footman passed over. There is evidence that they were loose in this way for several days before the accident, and one witness testifies that on the morning of the accident the condition of these loose planks and rails was such that when he crossed with his buggy he did not feel like riding across and got out and led his horse over. Winters himself states that when the foreman of the "floating gang" had them throw back the planks, ties, and rails in the crossing, he "never heard him order it spiked down." It does not appear, however, how many days this was before the accident, or whether Winters was one of the last men to work there, or whether he knew that no further work had been done at the crossing since that time, or whether this track was inspected by any other employés of the company after the "floating gang" finished working there.

Under these facts we are of opinion that the court was in error in directing a verdict in defendant's favor.

1. There was clearly evidence tending to show negligence on the part of the defendant in leaving this track in the condition in which it was at the time the derailment of the car occurred. The court below, in the opinion on the plaintiff's motion for a new trial, expressed, inferentially at least, the opinion that the plaintiff was a passenger at the time of the accident, and that the proof of the derailment and the plaintiff's injury were prima facie proof of the defendant's negligence. The defendant earnestly insists, however, that the plaintiff is not to be regarded as a passenger at the time of the accident, but that under the doctrine laid down by this court in Louisville & N. R. Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696, he must be regarded as being carried to and from his place of work as a servant of the railway company, and not as a passenger, and that hence, under the doctrine of Texas & P. R. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136, and Patton v. Texas & P. R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, as the plaintiff occupied the relation of an employé at the time of the accident, no presumption of negligence arises from the mere fact of the accident.

While it seems fairly inferable from the facts appearing in the record that the members of the "floating gang" were being carried to and from their place of work as a necessary incident to the discharge of the duties of their peculiar employment, and not for a purpose disconnected with that employment, so that under the doctrine of the Stuber Case they should be regarded as being carried as employés, rather than as passengers, we are of opinion that, independently of this

question and of any presumption of negligence that might have arisen from the relation of carrier and passenger, there was sufficient affirmative evidence tending to show negligence in the repair and maintenance of the track at the road crossing to have required the case to have been submitted to the jury on this question. It is clear that, even if Winters was being carried as a servant in the discharge of his duty and as an incident of his employment, the negligence of the employé charged with the master's personal and positive duty of maintaining the roadbed in safe condition for the performance of the work required of the servants, would not be negligence of a fellow servant, under the fellow servant doctrine, but negligence of the master for which it would be responsible. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Gardner v. Railroad, 150 U. S. 349, 355, 14 Sup. Ct. 140, 37 L. Ed. 1107; Swift v. Short (C. C. A., 8th Cir.) 92 Fed. 567, 34 C. C. A. 545; Snow v. Railroad, 8 Allen (Mass.) 441, 85 Am. Dec. 720; Ford v. Railroad Co., 110 Mass. 241, 14 Am. Rep. 598. See, also, the opinions of this court in Valley Ry. Co. v. Keegan, 87 Fed. 849, 31 C. C. A. 255, Herrick v. Quigley, 101 Fed. 187, 41 C. C. A. 294, and Lake Shore Ry. Co. v. Eder (decided Dec. 7, 1909) 174 Fed. 944, 948.

2. We are of the opinion that under all the circumstances of this case the court was in error in holding, in effect, that the evidence established as matter of law the contributory negligence of the plaintiff, so as to require that this question be withdrawn from the consideration of the jury and peremptory instructions given in defendant's favor. When, in an action to recover damages for personal injuries, the inference to be drawn from the facts is not so plain as to make it a legal conclusion that the plaintiff was guilty of contributory negligence, the question whether he was or was not so guilty must be left to the jury. Northern Pacific Railroad v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82.

Contributory negligence has been well defined as a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred. 7 Am. & Eng. Enc. Law (2d Ed.) 371; Alaska Gold Mining Co. v. Keating (C. C. A., 9th Cir.) 116 Fed. 561, 566, 53 C. C. A. 655; Alabama Gaslight Co. v. Railroad Co., 86 Ala. 372, 5 South. 735; Moakler v. Railway Co., 18 Or. 189, 22 Pac. 948, 6 L. R. A. 656, 17 Am. St. Rep. 717; Woodell v. Improvement Co., 38 W. Va. 23, 40, 17 S. E. 386. See, also, 1 Beach on Cont. Negl. § 7; Missouri Pacific Ry. Co. v. Moseley (C. C. A., 8th Cir.) 57 Fed. 921, 925, 6 C. C. A. 641; Southern Bell Tel. & Tel. Co. v. Watts (C. C. A., 4th Cir.) 66 Fed. 460, 466, 13 C. C. A. 579; Motey v. Marble & Granite Co. (C. C. A., 8th Cir.) 74 Fed. 155, 157, 20 C. C. A. 366; Plant Inv. Co. v. Cook (C. C. A., 5th Cir.) 74 Fed. 503, 20 C. C. A. 625. In 7 Am. & Eng. Enc. Law (2d Ed.) 375, it is said:

"These elements of contributory negligence, namely, the want of ordinary care and the proximate causal connection of that want of care with the injury, being considered in their order, we find the doctrine established by an overwhelming weight of authority that there must have been a want of ordinary care, under the circumstances of the case, contributing to the injury as

177 F.—4

an efficient and proper cause thereof, before contributory negligence can exist"
—citing many cases in support of this proposition.

However, in order to warrant a finding that negligence, or an act
not amounting to wanton wrong, is the proximate cause of an injury,
it must appear that the injury was the natural and probable cause of
the negligence or wrongful act, and that it ought to have been fore-
seen in the light of the attending circumstances.    Milwaukee Ry. Co.
v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Scheffer v. Railroad
Co., 105 U. S, 249, 252, 26 L. Ed. 1070; Missouri Pac. Ry. Co. v.
Moseley, supra; McDonald v. Snelling, 14 Allen (Mass.) 290, 92 Am.
Dec. 768.    See, also, St. Louis Railway Co. v. Bennett (C. C. A., 8th
Cir.) 69 Fed. 525, 16 C. C. A. 300.

The question as to what is the proximate cause of an injury is
ordinarily one of fact, for the jury to determine in view of the accom-
panying circumstances.    Milwaukee Ry. Co. v. Kellogg, 94 U. S. 469,
24 L. Ed. 256; Southern Pac. Co. v. Yeargin (C. C. A., 8th Cir.) 109
Fed. 436, 439, 48 C. C. A. 497.

Under all the circumstances of this case, especially in the absence of
clear proof that Winters knew or had reason to know that this crossing
had not been put in safe condition after he saw the last work done upon
it, and in view of the previous habit of the employés of riding upon the
top of the camp car with the knowledge both of the section foreman and
the train conductor, under such circumstances that a license to ride up-
on the top of the car may, it seems, be fairly implied (Ellsworth v. Me-
theney, 104 Fed. 119, 122, 44 C. C. A. 484, 51 L. R. A. 389), and in view
of the fact that the train was moving at a slow rate of speed upon a
switch track, we are of opinion that the evidence, as a whole, did not
warrant the conclusion, as a matter of law, that the plaintiff was guilty
of negligence in riding upon the top of the car which contributed to the
injury as one of its proximate causes, and that it should have been
left to the jury to determine whether in thus riding upon the top of the
car he was under the circumstances guilty of negligence of which the
injury received was a natural and probable consequence which ought
to have been foreseen in the light of the attending circumstances, so
as to make it a proximate cause of the injury and bar any recovery to
which he might otherwise have been entitled.

The present case is, in our opinion, clearly distinguishable from
those of Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506, and Erie
Railroad Co. v. Kane, 118 Fed. 223, 55 C. C. A. 129, upon which the
defendant chiefly relies.

In Railroad v. Jones, supra, in which it was held that a laborer,
who was riding on the pilot of a locomotive, without knowledge
of any agent of the railroad company, and after he had been on
several occasions forbidden to ride there, and was injured in a colli-
sion with another train, was guilty of contributory negligence that
barred recovery, the plaintiff's position on the pilot, as said by Mr. Jus-
tice Swayne in delivering the opinion of the court, was "next to the
cowcatcher, and obviously a place of peril, especially in case of a colli-
sion."    And in the subsequent case of Northern Pacific Railroad v.
Egeland, 163 U. S. 93, 96, 16 Sup. Ct. 976, 41 L. Ed. 82, this case and

that of Kresanowski v. Northern Pacific Railroad (C. C.) 18 Fed. 229, were distinguished by the court in these words:

"The persons injured in those cases were seated in the first case on the pilot of the engine, and in the other on the front beam of the engine, with his feet over the pilot. The positions were most dangerous, and the danger was plain and obvious at the first sight. No other place on either train was as dangerous. The great and obvious danger of the positions in which the plaintiffs voluntarily placed themselves is the material and controlling fact upon which the cases were decided."

In Erie Railroad Co. v. Kane, supra, it was held by this court that where the fireman on a switch engine, while it was running with several cars in front of it, had without reasonable cause left his proper place in the cab, and was riding on the front of the engine, engaged in cleaning the number below the headlight, when this work was not required, or even authorized, and while so engaged was killed as the result of a collision with another switch engine, his own contributory negligence barred recovery. This holding was, however, plainly rested in the opinion upon the rule of "obvious" danger laid down in the Jones, Kresanowski and Egeland Cases; it being stated in the opinion of the court (page 233 of 118 Fed., page 139 of 55 C. C. A.) that riding upon the front of the engine—

"is so dangerous that it must be regarded that it is negligence for one to be there under such circumstances. In the event of a collision there is no place so dangerous for one to be as between cars, or between a car and an engine, as here, except it be on the front of the engine with no cars in front of it."

The facts in the present case are materially different from those in the Jones and Kane Cases, both in the obvious danger of the position assumed, a position on the top of a car being less dangerous than one on the front of an engine, and in the proximate character of the negligence as a cause of the injury, there being evidently more ground for reasonably anticipating an injury from a collision by riding upon the front of an engine than for apprehending injury from derailment by riding upon the top of a car.

The same distinction applies to many other of the cases relied on by the defendant, in which the proximate causal connection between the negligence and the injury received was more clear and direct than in the case at bar, as, for example, in Atchison Railroad Co. v. Lindley, 42 Kan. 714, 22 Pac. 703, 6 L. R. A. 646, 16 Am. St. Rep. 515, in which a person riding on the top of a car was injured by a sudden jerk of the train, and Ft. Scott Ry. Co. v. Sparks, 55 Kan. 288, 39 Pac. 1032, in which a person riding on the top of a caboose was injured by being knocked off by an overhead bridge.

It is true that in Little Rock v. Miles, 40 Ark. 298, 48 Am. Rep. 10, it was held that a drover riding on the top of a cattle car, and injured by derailment of the train, was barred from recovery by his contributory negligence; it being said in this case that a passenger who voluntarily and unnecessarily rides upon the top of a car is not in the exercise of that discretion which the law requires. This expression has been repeated in other cases. We do not, however, concur in this as the statement of a general rule of law applicable in all cases, and as implying that a person riding upon the top of a car, without regard to the

speed of the train, the character of the road and other circumstances, is necessarily, as a matter of law, to be held guilty of negligence which contributes as a proximate cause of an injury resulting from a derailment of the train or other like cause.

The case will accordingly be remanded to the court below, with directions to set aside the judgment in favor of the defendant and grant the plaintiff a new trial.

### On Petition for Rehearing.

We are of the opinion that the petition which has been filed in behalf of the defendant in error does not present sufficient grounds for a rehearing.

1. While the plaintiff's amended petition in the Circuit Court, stating his cause of action, is somewhat inartificially drawn, the allegation that the "defendant was negligent and careless in failing to furnish a safe and secure track to convey said plaintiff to and from his work for the purpose of running said train backward," etc., when read in connection with the other averments of the amended petition, is, we think, sufficient to bring the question of the defendant's negligence in leaving the track at the road crossing in the condition in which it was at the time the derailment occurred fairly within the scope of the pleadings. And it was evidently so treated in the court below by all parties and tried on that theory; no exception having been made to the introduction by the plaintiff of evidence as to the condition of the track.

2. After a careful re-examination of the evidence as to Winters' knowledge of the condition of the track at the time of the accident, we think that the reference in our former opinion to "the absence of clear proof that Winters knew, or had reason to know, that this crossing had not been put in safe condition after he saw the last work done upon it," is warranted by the evidence. While it does appear that the floating gang to which Winters belonged had worked on the switch track about two weeks, probably up to the day of the accident, it does not definitely or clearly appear when they did the work at the road crossing. While one witness states generally that before the accident they had worked at the road crossing, or close to it, for eight or ten days, owing to the ambiguity of his language, especially in the use of the words "before" and "there," it does not clearly or satisfactorily appear whether they had continued working at or near this point up to the day of the accident, or had ceased working at this point some days before. A like ambiguity exists in Winters' own statement that the rails and plank in the crossing had been in that shape "all the time they worked down there"; it not being clear whether he refers to its condition prior to the time that he worked on it, or afterwards, especially in view of the fact that he fails in this answer to respond specifically to the first part of the question inquiring "how long they left it in this shape." There is, furthermore, no specific evidence as to whether Winters was one of the last men to work at the crossing, or whether, after the time when he states that the plank and other material was thrown back in the crossing, he continued to work at the crossing or so near thereto as to make its condition clearly observable by him. And in the vague condition of the testimony we cannot regard

his statement that he never heard the foreman order the planks and material to be spiked down as necessarily involving the inference that all the work was then completed at the crossing, or that he knew, or had reason to know, that thereafter its condition was left unchanged up to the time of the accident. We are therefore of the opinion that the testimony is not sufficient, when considered upon the defendant's motion for peremptory instructions, to necessarily charge Winters with knowledge of the condition of the crossing at the time of the accident.

The contention of the defendant that, in passing upon the motion for peremptory instructions, no inference should be drawn that Winters may not have had knowledge as to the condition of the track at the time of the accident, is, we think, unsound, in that it asks the court, on defendant's own motion for peremptory instructions, to resolve all doubt as to the testimony against the plaintiff, to exclude an inference favorable to the plaintiff fairly consistent with the testimony, and to hold him necessarily chargeable with notice of the condition of the tract at the time of the accident because it appears that he had knowledge of its condition an indefinite number of days before the accident, when, so far as is definitely shown, the work at the crossing may not have been completed, and in the absence of clear proof that he continued from that time to the day of the accident to work at the crossing or so near thereto that its condition was plainly apparent to him.

That, however, the court on the defendant's motion for peremptory instructions should not draw conclusive inferences from the proof against the plaintiff in matters which may be subject to reasonable explanation, or exclude from consideration an explanatory hypothesis favorable to the plaintiff and consistent with the evidence, is shown by the case of Kane v. Northern Central Ry., 128 U. S. 91, 95, 9 Sup. Ct. 16, 32 L. Ed. 339, in which the question was whether peremptory instructions had been properly given in favor of the defendant on the ground of the contributory negligence of the plaintiff, a brakeman, who, after observing that a step was missing from one of the cars, had been injured in subsequently attempting to let himself down from it to reach another car. The testimony showed that at the moment the plaintiff let himself down from the top of the car he forgot that the step was missing; the plaintiff himself testifying that he could not remember how his mind was occupied at the time, and that his mind was only on going to his post. While, however, he did not claim in his evidence that there was anything which prevented him from recognizing this car as the one upon which he knew that a step was missing, the court, in holding that peremptory instructions for the defendant had been erroneously given, said:

"In the case before us, the jury may, not unreasonably, have inferred from the evidence that while the plaintiff was passing along the tops of the cars, for the purpose of reaching his post, he was so blinded or confused by the darkness, snow, and rain, or so affected by the severe cold, that he failed to observe, in time to protect himself, that the car from which he attempted to let himself down was the identical one which, during the previous part of the night, he had discovered to be without its full complement of steps."

We are of opinion, under the authority of this case, and under the general rule stated by this court in Mt. Adams, etc., Ry. Co. v. Lowery, 74 Fed. 463, 20 C. C. A. 596, that it is the duty of the court, when a motion is made to direct a verdict, to take that view of the evidence most favorable to the party against whom the motion is directed, that, giving to the plaintiff the benefit of every inference that can fairly be drawn from the testimony, it is not necessarily to be inferred in favor of the defendant, from the meager and indefinite testimony in this case, that the plaintiff either knew, or had reason to know, that the condition of the track had remained unchanged from the time he is shown to have worked upon it until the time of the accident.

3. The defendant's argument that if the plaintiff was guilty of negligence in reference to the condition of the track, which was a proximate cause of the injury, Winters must necessarily also have been guilty of negligence contributing as a proximate cause of the injury, furthermore fails to take into account, first, the fact that Winters' contributory negligence is to be determined, not merely by such knowledge as he may have had of the condition of the track, but also by the rate of speed at which the train was moving and all the other surrounding circumstances at the time of the accident, and, second, the different degree of care required of the master and servant in reference to discovering or knowing the dangerous condition of a place of work. In Railway Co. v. Jarvi (C. C. A., 8th Circuit) 53 Fed. 65, 3 C. C. A. 433, the court said, in reference to this last question:

"But the degrees of care in the use of a place in which work is to be done, or in the use of other instrumentalities for its performance, required of the master and servant in a particular case, may be, and generally are, widely different. Each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances; but the circumstances in which the master is placed are generally so widely different from those surrounding the servant, and the primary duty of using care to furnish a reasonably safe place for others is so much higher than the duty of the servant to use reasonable care to protect himself in a case where the primary duty of providing a safe place or safe machinery rests on the master, that a reasonably prudent person would ordinarily use a higher degree of care to keep the place of work reasonably safe, if placed in the position of the master who furnished it than if placed in that of the servant who occupies it."

This statement was quoted and approved by Judge Taft in delivering the opinion of this court in Norman v. Wabash R. Co., 62 Fed. 727, 729, 10 C. C. A. 617.

4. It is unnecessary to determine whether under the rule stated in Adams v. Shirk (C. C. A., 7th Circuit) 104 Fed. 54, 43 C. C. A. 407, and the practice of this court, as stated by Judge Lurton in Louisville & N. R. Co. v. Womack, 173 Fed. 752, 97 C. C. A. 559, decided November 2, 1909, the defendant, not having included the defense of assumption of risk as one of the grounds for the motion for peremptory instructions in the court below, can rely on this defense in this court for the purpose of sustaining the action of the trial judge in granting the peremptory instructions, since we are of opinion that, as above stated, the proof taken as a whole fails to show clearly and conclusively either that Winters either knew that the work on the track at the crossing had

been completed and that it remained in the condition in which he had seen it up to the time of the accident, or that he worked thereafter in such proximity to this crossing that its condition was plainly observable to him, so as to bring the case, on the motion for peremptory instructions, within the doctrine of the assumption of risk by continuing in service without objection, as stated in Texas & P. Ry. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, and Choctaw Ry. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96, even if the language of those cases is to be considered as relating to the opportunity of the employé to observe the condition of the defective appliances, rather than to the obvious character of the defect itself.

5. On the whole we are of the opinion that to support the defendant's contention as to the contributory negligence of the plaintiff, or his assumption of risk, would, in the present condition of the record, require the court to weigh the evidence, in contravention of the rule stated by this court in Mt. Adams, etc., Ry. Co. v. Lowery, supra, and that the evidence is not such as to clearly and satisfactorily establish either of these defenses as matter of law.

The petition for rehearing is accordingly denied.