Argued October 16, 1930; reargued February 17;
affirmed April 14, 1931

# *BEVIN *v.* OREGON-WASHINGTON R. & NAV. CO.

(298 P. 204)

---

\* Writ of certiorari denied by the United States Supreme Court.

*Roy F. Shields,* of Portland (W. A. Robbins, F. J. Betz, and A. C. Spencer, all of Portland, on the brief), for appellant.

*B. A. Green,* of Portland, for respondent.

BELT, J. This is an action under the Federal Employers' Liability Act to recover damages for personal injuries alleged to have been sustained by plaintiff while employed as a section hand in cutting weeds on the railroad right of way of the defendant company, about four miles east of Arlington, Oregon. Plaintiff charges the defendant with negligence in furnishing him with a defective shovel with which to carry on his work and alleges that, by reason thereof, a small particle of rock glanced from the shovel blade and struck him in the right eye, injuring it to such an extent as to finally necessitate its removal. The specific charge of negligence may be thus summarized: That plaintiff was obliged to work with a short-handled shovel, the blade of which was "dull, bent, rounded and split." Plaintiff also alleges that he continued to work with this shovel solely on the statement of the foreman that its defective condition would be corrected or a new shovel furnished. Defendant denies the charge of negli-

gence and affirmatively alleges contributory negligence and assumption of risk. Verdict and judgment were had for plaintiff in the sum of $20,000. Defendant appeals, assigning as error the denial of its motions for judgment of nonsuit and for a directed verdict. These motions are predicated upon the propositions: (1) That there is no substantial evidence tending to show that the alleged negligence was the proximate cause of the injury; (2) that the evidence discloses as a matter of law that plaintiff assumed the risk of his employment. Defendant also claims that the judgment should be reversed by reason of the giving of certain instructions and the refusal to give others.

Plaintiff, a young man approximately twenty years of age, had been employed as a section hand by the defendant company for about a month prior to the accident which occurred on August 21, 1928. He was a member of a section crew of five men with headquarters at Arlington and was taken to and from the place of work by means of a motor propelled track car which also carried the necessary tools and equipment. According to the testimony of plaintiff, there was only a shovel for each man and, after the other workers had selected their shovels, he was obliged to take, on the direction of the foreman, the last shovel which, it is alleged, was defective as above stated. Further describing the condition of the shovel, plaintiff said, in substance, that a split in the middle of the blade extended back about one inch from the cutting edge and that one lip of the blade turned up and the other turned down. Plaintiff and another young man were assigned by the foreman to the work of cutting Russian thistles which were about four feet high and, at that time of the year, had become unusually dry and tough. Referring to the work in which he was engaged, plaintiff

said it was necessary to take three or four hard "jabs" at a thistle before it could be cut down even with the ground. He claims that, during the morning, two or three times dirt and sand were thrown into his face by reason of this defective shovel and that he complained of its condition to the foreman, a Japanese named Yamada, who promised that at noon he would either repair the shovel or secure another for him. Plaintiff said that when he quit work at noon he took the shovel with him and requested the foreman to fix it in accordance with his promise and that he replied that "he would fix it as soon as he got through with his lunch or he would take the Mexican off and give me his shovel and put the Mexican at something else." After lunch plaintiff says that he again asked the foreman about the shovel and that he said "Take this shovel and go to work or quit." Plaintiff continued work with the alleged defective shovel until about 2:30 o'clock in the afternoon when he was injured.

■ Relative to the question as to whether the defective shovel caused the dirt and sand to fly up into plaintiff's face, on cross-examination, in response to the question, "And that was caused by this split blade, was it?" he answered, "Yes, sir." Ralph Lighthill, who has had considerable experience in working as a section hand on railroad right of ways, was permitted, without objection by counsel for defendant, to testify as a sort of expert about the proper manner in which to use these shovels and the danger that would occur from glancing rock or gravel by using one which was defective in the particulars alleged. He also expressed the opinion that a shovel such as the one in question would be much more apt to throw gravel or rock than a shovel that was in good condition. In view of the assignments

of error, we have given only that portion of the testimony most favorable to the plaintiff. It is not deemed necessary to set forth any testimony tending to support the theory of the defendant. We are not concerned with questions of fact.

It is conceded that plaintiff, at the time of his injury, was engaged in a work furthering interstate commerce and that the Federal Employers' Liability Act applies; that the action is controlled by applicable principles of the common law rules of negligence as construed and determined by the federal courts; and that, while the defendant railroad company, under the Employers' Liability Act, is not an insurer against accident to its employees, it is in duty bound to furnish reasonably safe appliances and tools with which to carry on work.

 We first inquire: Is there any substantial evidence tending to show that the alleged negligence was the proximate cause of the injury? Ordinarily, the question of proximate cause is one for the jury to determine. The court is warranted in withdrawing this issue from the jury only when it can say that no reasonable inference that the alleged negligence caused or produced the injury can be deduced from the evidence: *Atchison, T. & S. F. Ry. Co. v. Toops,* 281 U. S. 351 (50 S. Ct. 281, 74 L. Ed. 896), citing *Patton v. Texas & Pac. Ry. Co.,* 179 U. S. 658 (21 S. Ct. 275, 45 L. Ed. 361), and other decisions of that court. In other words, the court can determine the question of proximate cause as a matter of law only when it can say, after a review of the entire evidence, that no reasonable man would infer from the facts proved that the alleged negligence proximately caused the injury. While it is well established that a jury will not be permitted to enter the

realm of speculation or conjecture in determining whether the defendant may or may not have been guilty of negligence, it is equally well settled that, after substantial evidence has been offered tending to show negligence, the court will not usurp the province of the jury by weighing probabilities in an effort to determine whether such negligence was the proximate cause. As stated in Labatt's Master and Servant (2d Ed.), § 1572:

"Whether the breach of duty established in the given case was the proximate cause of the injury is a mixed question of law and fact. It is, therefore, primarily one for the jury to determine under proper instructions. A court will not undertake to settle it in any case where it involves the weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences."

■ It is not incumbent upon the plaintiff to establish proximate cause by direct proof. Demonstration is not necessary. It may be established by direct or circumstantial evidence. It is impossible to lay down any hard and fast rule for determining whether a negligent act is or is not the proximate cause of the accident. Each case must be considered in the light of its own facts and circumstances. The difficulty lies not in the statement of the law of proximate cause but rather in its application.

■ It is common knowledge that rocks occasionally glance from the blade of a shovel even though it may be in good condition. The mere fact, however, that it was possible for plaintiff to have sustained an injury by reason of glancing particles of rock or gravel even had the shovel not been defective does not preclude recovery. The more pertinent question is: Was this shovel in its defective condition more likely to have produced

injury when used in work of the character involved in this case? The testimony on behalf of plaintiff tends to show a reasonble probability that he sustained an injury to his eye by reason of the negligence charged. At least, we are not prepared to say, as a matter of law, that there is no causal connection between the alleged negligence and the injury. We conclude that the question of proximate cause was one for the jury to determine.

While *Swaim v. Chicago, R. I. & P. Co.*, 187 Iowa 466 (174 N. W. 384), may in some particulars be distinguished from the case at bar, yet it strongly supports the contention of the plaintiff relative to the question of proximate cause. In that case the plaintiff and a fellow worker were using the blunt end of a tamping pick to drive broken stone used for ballasting material under cross ties. The plaintiff therein sustained an injury to his eye by reason of a flying particle of rock caused by a blow of a fellow servant. It was charged that the pick had become worn and rounded on its blunt end and that a stone broken under its stroke had a tendency to fly up, becoming a source of danger to fellow workers. The contention was made there, as here, that the alleged negligence was purely speculative and conjectural. The court held that the question of proximate cause was one for the jury, saying:

"It is no answer to the plaintiff's claim in this respect to say that fragments of rock will sometimes fly under the impact of a pick in perfect condition and that it is therefore possible for plaintiff to have received the injury of which he complains even if the pick in question had not been defective. Absolute certainty of proof is not required and indeed is rarely obtainable. As it has been stated by this court, 'Proxi-

mate cause is probable cause; and the proximate consequence of a given act or omission as distinguished from a remote consequence is one which succeeds naturally in the ordinary course of things'."

Upon appeal to the Supreme Court of the United States a writ of certiorari was denied: 252 U. S. 577. Also see the closely analogous case of *Manning v. Portland Shipbuilding Co.,* 52 Or. 101 (96 P. 545), which supports the contention of the plaintiff on this phase of the case. True, this action was not under the Federal Employers' Liability Act, but the reasoning of the court therein is, nevertheless, persuasive.

Defendant strongly relies on *Patton v. Texas & Pac. Ry.,* supra, but we think the facts in that case are materially different from the one before us for consideration. In that case the fireman on a locomotive was injured by reason of a step on the engine becoming loose and insecure. There was no evidence tending to show how this step became loosened. In fact, it was shown that the step was securely fastened before the engine started on its run. Under these circumstances the court held it was a mere matter of conjecture as to how the step became loose. In the instant case, if the testimony of the plaintiff is to be believed, the defendant company failed to exercise reasonable care in furnishing him the shovel with which to do his work. There was no need of discussing the question of proximate cause in the Patton case because no negligence whatever was shown. Neither do we think that *Great Northern Ry. Co. v. Johnson,* 176 Fed. 328, is controlling, for the reason that in the instant case there is substantial evidence tending to show a probability that plaintiff was injured by reason of the defective condition of the shovel. In the Johnson case it was entirely speculative as to what produced the injury.

 Having concluded there is evidence tending to show that the defendant was guilty of a breach of duty in not furnishing plaintiff with a reasonably safe tool, we next inquire whether we can say, as a matter of law, that he is precluded from maintaining this action by reason of having assumed the risk or danger of the work in which he was engaged. It is well settled that an employee assumes the ordinary risks incident to his employment and also those extraordinary risks arising through the negligence of the employer if he understands and appreciates them. Plaintiff admits that he knew the shovel was defective and there was danger in using the same. It was, indeed, a simple tool which required no particular skill in its use. He seeks, however, to be absolved from the application of the general rule because of an alleged promise of the foreman to repair or replace it, when the defective condition of the shovel was brought to his attention. Assuming, as we must, that such promise was made, it is important to determine whether plaintiff relied thereon and was thereby induced to continue with his work. An employer who promises to repair or replace a defective appliance or tool impliedly agrees that he will assume the burden of risk incident to its use until the time fixed for the performance of such promise has elapsed. If no definite time is specified in the promise to make repairs the law implies that it will be done within a reasonable length of time. During that period of time after the making of the promise and until the expiration of a reasonable length of time for its performance the employee does not assume the risk. However, after lapse of the time fixed to make the repairs or after expiration of a reasonable time for the performance of the promise the employee assumes the risk as if no promise had been made: 18 R. C. L. 699; 39 C. J. 794. The rule is

thus stated by the United States Supreme Court in *Seaboard Air Line Ry. Co. v. Horton,* 233 U. S. 492 (34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475):

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

In Labatt's Master & Servant (2d Ed.), vol. 4, p. 3884, it is said:

"The only rational view seems to be that, as soon as the period contemplated for the removal of the dangerous conditions terminated, the servant's position is precisely what it would have been if no promise had been given; that is to say, he reassumes the risk."

In discussion of the rationale of the rule, there is wide divergence in the reasoning of the courts, but it may be said with some degree of certainty that in a greater number of jurisdictions the foundation of the rule is based upon the promise as effecting a change in the relationship existing between the master and the servant under the original contract of employment. When the servant enters upon his work the master impliedly agrees that he will furnish him with reasonably safe tools and appliances. After the servant knows of the dangerous or defective appliance and makes com-

plaint to the master about the same, it is the latter's manifest and imperative duty to remedy the defect, and, if the servant is induced to continue with his work upon the assurances of the master that such repairs will be made, the master in effect waives the defense of assumption of risk during the time for the performance of his promise.

■ It will be noted that in the statement of the rule by the United States Supreme Court in the Horton case it is said that the employee "does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise." This sentence has caused some uncertainty as to whether an employee who remains at work in the face of known danger so imminent that no reasonably prudent man would confront it even under promise of repair assumes the risk or is guilty of contributory negligence. If the reason for the rule for suspension of assumption of risk is borne in mind, it seems to us that it cannot be logically said that an employee, who continues work by reason of promise to repair, assumes the risk. It is rather a question of contributory negligence. However, under the facts in this case, we need not be greatly concerned with this query for it cannot be said, as a matter of law, that the work in which Bevin was engaged was so obviously and imminently dangerous that no ordinarily prudent man would risk it. Cutting down thistles with so simple a tool as a shovel does not impress us as a particularly hazardous employment. In the Horton case the court refused so to hold although the injury resulted from the bursting of an unguarded water gauge on a locomotive.

■ Defendant urges that the rule above stated relieving the servant of the burden of assumption of risk

where a promise of repair has been made, has no application to simple tools and appliances. We are unable to agree with this contention, although it must be conceded that it is supported by reputable authority: *McGill v. Cleveland & S. W. Traction Co.*, 79 Ohio St. 203 (86 N. E. 989, 19 L. R. A. (N. S.) 793, 128 Am. St. Rep. 705); *Meador v. Lake Shore and Southern Railway*, 138 Ind. 290 (37 N. E. 721, 46 Am. St. Rep. 384); *Marsh v. Chickering*, 101 N. Y. 396 (5 N. E. 56); *Riley v. American Steel and Wire Co.*, 129 Ill. App. 123; *Gunning System v. Lapointe*, 212 Ill. 274 (72 N. E. 393); *Penn. Ry. Co. v. Martin*, (Ind.) 170 N. E. 554; *Arkansas Central R. Co. v. Goad*, 136 Ark. 467 (206 S. W. 901); *Stirling Coal and Coke Co. v. Fork*, 141 Ky. 40 (131 S. W. 1030, 40 L. R. A. (N. S.) 837). In our opinion the better reasoned cases make no distinction between simple and complicated tools so far as the legal effect of a promise to repair is concerned: *Swain v. C. R. I. & P. Co.*, supra; *Brouseau v. Kellogg Switchboard & Supply Co.*, 158 Mich. 312 (122 N. W. 620, 27 L. R. A. (N. S.) 1052); *Hermanek v. Chicago & N. W. Ry. Co.*, 186 Fed. 142; *Louisville Hotel Co. v. Kaltenbrun*, 26 Ky. Law Rep. 208 (80 S. W. 1163); *Cudahy Packing Co. v. Skoumal*, 125 Fed. 470; *Johnson v. Chicago, M. & St. P. R. Co.*, 71 Mont. 390 (230 P. 52). We are unable to see any reasonable ground for distinction between simple and complex tools where the servant has knowledge of their defective condition. In *Brouseau v. Kellogg Switchboard & Supply Co.*, supra, it is said:

"Regarding the employer's promise to repair as a temporary assumption of the risk on his part, it appears to us illogical to hold that the employee is no longer charged with the obvious risks of a complicated machine, but still assumes the obvious risks of a simple implement. We deem it more in accordance with the

principle upon which the doctrine of assumed risk rests in this state, to hold that it applies alike to simple tools and complicated machinery.''

 We come now to the question: Can it be said as a matter of law that plaintiff could not reasonably expect the foreman to keep his promise either (1) to fix the shovel, or (2) to take the Mexican off the job and give him his shovel? Defendant asserts that the inference to be drawn from the evidence is so plain that it amounts to a legal conclusion. On the other hand, plaintiff contends that whether an ordinarly prudent man would have relied upon the promise of the foreman was a question of fact for the jury. It is fundamental that, if fair-minded men might draw different inferences from the facts, the issue of assumption of risk is exclusively within the province of the jury. Did the foreman intend that his promise was to be performed during the noon hour or not at all? In this respect we inquire: When was the Mexican to be taken ''off the job'' so as to give his shovel to the plaintiff? Was time the essence of this alleged agreement? It will be borne in mind that the foreman, according to the testimony of the plaintiff, did not specifically revoke the promise, although it must be conceded, in view of his peremptory order to ''take this shovel and go to work or quit,'' that an inference might be drawn that he impliedly did so. But we think it is not altogether unreasonable, in the light of the entire record, to infer the continuation of the promise. In this connection we must take into consideration the fact that the work was being done four miles from Arlington, at a place where there were no facilities for repairing the shovel. Furthermore, it is doubtful whether the foreman intended to place an absolute time limitation upon his promise. Was the plaintiff entitled to any hour of grace or is his right to recover to be precluded with absolute definiteness as to

time? When we test the conduct of plaintiff in the light of what an ordinarily prudent workman would have done under similar circumstances, it is believed that it would be error to declare as a matter of law that he did not rely upon the promise of the foreman. As stated in Labatt's Master & Servant, vol. 3, p. 3304:

"* * * if he (the servant) has justifiable grounds for believing that the master will remove the source of danger, whether his impresison is the result of an explicit promise or not, he may continue working without culpability as long as the jury may consider it to be reasonable to retain that belief."

Indeed, some courts recognize that under certain circumstances the "fixed time" may imply some grace beyond the day named. In *Atchison, T. & S. F. R. Co. v. Lannigan,* 56 Kans. 109 (42 P. 343), the court said:

"The employee has still a reasonable time after the employer is in default before he is required to either quit the service or assume the risk."

In *Diehl v. Swett-Davenport Lumber Co.,* 14 Cal. App. 495 (112 P. 561), it is stated:

"But when the promise is that the repair shall be made upon the happening of a certain event, the master assumes the risk until the event has happened and for a reasonable time thereafter."

*Illinois Central Railroad Co. v. Creighton,* 63 Ill. App. 165, is particularly in point. On March 11th the promise was made to repair a locomotive that night. It was repeated on the 12th and not fulfilled in either instance. The workman was injured on the 13th day of March. The court refused to declare, as a matter of law, that the plaintiff was precluded from recovery. It was held that:

"The gist of the promise was that the engine should be repaired without delay, and appellee was justified in regarding this promise as continuing for a reasonable time beyond the night of the 12th."

In the instant case, unlike most of those cited, in addition to the promise to repair, there was a peremptory order by the foreman to use this defective shovel or quit. This court is not unmindful of the fact that the ordinary laborer who must work in order to eat would, under such circumstances, obey the command of the foreman. The work was not so obviously dangerous as to cause an ordinarily prudent man to refuse to go on with it. Ordinarily, assumption of risk is a question of fact for the jury. To hold, as a matter of law, that plaintiff voluntarily assumed the risk is, in our opinion, giving undue emphasis to the doctrine, although some courts apparently take cognizance of only physical coercion.

The trend of modern decisions is to rebel against the harshness of a doctrine which enables the master to say, in effect, to the servant: "It is true, as you have complained, that I have been negligent in failing to furnish you with a reasonably safe tool, but you are nevertheless ordered to continue work and, in the event you are injured, there can be no recovery since you understood and appreciated the risk of working with such defective appliance."

As a usual thing, a workman is not expected to substitute his judgment for that of the foreman. It is his duty to obey. We think the jury might infer from the fact that Bevin returned to work in obedience to the order of the foreman that he relied upon the latter's judgment. At least, we are not prepared to say that such inference would be altogether unreasonable. In Shearman & Redfield on Negligence (6th Ed.), § 207h, it is said:

"The true rule, in this, as in all other cases, is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person

should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has a right to assume that he is not sent into any unusual peril, and he is not bound to investigate into the risk, before obeying his orders."

*Lehigh Valley R. Co. v. Skoczyla,* 278 Fed. 378, strongly supports the contention of the plaintiff. In that case, Kulish's death was due to a worn and defective wrench. The wrench was a simple tool and, as stated in the decision, "the defect was so obivous that the employe saw and knew it." Kulish complained to his foreman and the latter, without making any promise of repair or replacement, ordered him back to work. The court held that whether he assumed the risk was a question of fact for the jury, saying:

"* * * The test is whether the conduct of the foreman was such as to justify the employee in relying on the judgment of the foreman rather than on his own in the continued use of the tool, or, on the other hand, whether the danger from the defects in such continued use was so imminent that no man of ordinary prudence would hazard it."

Writ of certiorari denied 258 U. S. 631.

The reasoning of the court in *New York Central & H. R. R. Co. v. Vizvari,* 210 Fed. 118 (L. R. A. 1915C, 9), also strongly supports the theory of the plaintiff although the decision is based upon a somewhat different state of facts. In the Vizvari case the plaintiff sustained an injury to his eye by reason of a splinter of steel which flew from a chisel used to cut a railroad iron. The court expressly stated that this chisel was not a simple tool

within the meaning of the law, since it would be safe or unsafe according to the temper of the steel. The servant expressed some doubt to the foreman as to whether it was a good chisel, but was told that he would have to use that chisel or "go home and stop work." The court refused to say, as a matter of law, that Vizvari fully understood and appreciated the danger and risk of the work with such chisel, and approved submission to the jury of the question as to whether the servant relied upon the superior knowledge of his foreman. In the Vizvari case there was no promise made to repair the defective tool. The court said:

"And so in reference to assumption of risks, where an employee has knowledge of a defect or danger and calls, as in this case, the attention of the employer or his representative to it, and is ordered to go on with the work, the question should go to the jury to say whether the danger was so manifest that a person of ordinary prudence and caution would have incurred it and also whether the risk was imminent."

It would seem that a stronger case is presented relative to reliance upon the judgment of a superior where, in addition to the peremptory order to continue work, there is a promise of repair: Shearman & Redfield on Negligence (6th Ed.), § 207h.

In *Northern Pacific Railroad Co. v. Egeland,* 163 U. S. 93 (41 L. Ed. 82, 16 S. Ct. 975), a conductor ordered a workman to jump to a station platform from a railroad car moving at the rate of four miles per hour. The platform was about a foot lower than the car step. The court refused to direct a verdict for defendant. It was said:

"Here there is an element of obedience to the command given by the person in charge of the train and of the crew, and given to a common laborer, and upon a

matter where the jury might find the danger was not so great and so obvious as to render obedience to the order a risk of the person obeying.''

In *Maslek v. Pennsylvania R. Co.*, 26 Ohio App. 520 (160 N. E. 523), the court stated:

''A peremptory order commanding the use of an appliance, even though not accompanied with such assurance and promise, to say the least, presents a circumstance from which a waiver of the defense of assumption of risk could be inferred. At any rate it becomes a question of fact to be submitted to the jury under proper instructions.''

▮ In the light of what has been said, it is necessary to consider but one assignment of error relative to instructions. It is as follows:

''If you conclude after you have weighed all the testimony, and in the light of the instructions given you, that the plaintiff is entitled to recover you should then assess (in) his favor and return a verdict in such a sum as in your good judgment would compensate him in money for the injury, if any, you may find he has sustained, * * *.''

The objection offered to this instruction is that it permitted the jury to use its ''good judgment'' in assessing the damages, regardless of the evidence. We do not think it is subject to the same criticism as the one which warranted a reversal in *Rugenstein v. Otten-heimer,* 70 Or. 600 (140 P. 747), wherein it was held that the trial court impliedly invited the jury to do as its conscience dictated, regardless of the evidence. In other parts of the charge the jury was advised that its verdict must be based upon the evidence. There was no invitation to enter the realm of speculation or conjecture in the assessment of damages.

Finding no error in the record, it follows that the judgment of the lower court is affirmed.